**2015-1506, -1543**

# United States Court of Appeals
# for the Federal Circuit

KILOPASS TECHNOLOGY, INC.,

*Plaintiff-Appellant,*

*v.*

SIDENSE CORPORATION,

*Defendant-Cross-Appellant.*

*Appeals from the United States District Court for the Northern District of California in No. 3:10-cv-02066-SI, Judge Susan Y. Illston.*

## NON-CONFIDENTIAL BRIEF OF DEFENDANT-CROSS-APPELLANT SIDENSE CORPORATION

ROGER L. COOK
(California Bar No. 55208)
SARA B. GIARDINA
(California Bar No. 278954)
KEVIN J. O'BRIEN
(California Bar No. 278823)
KILPATRICK TOWNSEND &
STOCKTON LLP
Eighth Floor, Two Embarcadero Center
San Francisco, California  94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300
rcook@kilpatricktownsend.com
sgiardina@kilpatricktownsend.com
kobrien@kilpatricktownsend.com

JOSHUA H. LEE
(Georgia Bar No. 489842)
KILPATRICK TOWNSEND &
STOCKTON LLP
1100 Peachtree Street, N.E.,
Suite 2800
Atlanta, Georgia  30309-4528
Telephone:  (404) 815-6500
jlee@kilpatricktownsend.com

*Attorneys for Defendant-Cross-Appellant
SIDENSE CORP.*

September 11, 2015

# CERTIFICATE OF INTEREST

Counsel for Defendant-Cross-Appellant Sidense Corp. certifies the

following:

1.     The full name of every party or amicus represented by me is:  Sidense Corp.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  Sidense Corp.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: N/A.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

>           Roger L. Cook
>           Sara B. Giardina
>           Kevin J. O'Brien
>           Kilpatrick Townsend & Stockton LLP
>           Eighth Floor, Two Embarcadero Center
>           San Francisco, California  94111
>
>           Joshua H. Lee
>           Kilpatrick Townsend & Stockton LLP
>           1100 Peachtree Street, N.E., Suite 2800
>           Atlanta, Georgia  30309

Dated:  September 11, 2015          Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP


By:  */s/ Roger L. Cook*  _____
                    Roger L. Cook

Attorneys for Defendant-Cross-Appellant
SIDENSE CORP.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST .................................................................. i

TABLE OF AUTHORTIES ....................................................................v

LIST OF ABBREVIATIONS AND CONVENTIONS ................................... viii

STATEMENT OF RELATED CASES ............................................... ix

JURISDICTIONAL STATEMENT ....................................................1

INTRODUCTION ...........................................................................1

STATEMENT OF THE ISSUES.........................................................6

STATEMENT OF THE CASE...........................................................8

STATEMENT OF THE FACTS .........................................................9

SUMMARY OF THE ARGUMENT ...................................................29

STANDARD OF REVIEW ..............................................................34

ARGUMENT ...............................................................................35

    I.    The District Court Did Not Abuse Its Discretion In
        Awarding Attorneys' Fees Under Section 285. ............................35

        A.    Kilopass Does Not Dispute That It Acted
            Unreasonably in Pursuing Objectively Baseless
            Literal Infringement Claims and Engaging in
            Litigation Misconduct ...........................................35

        B.    The District Court Correctly Determined That
            Kilopass's Claims of Infringement Under the
            Doctrine of Equivalents Analysis Were
            Objectively Baseless ...........................................38

**TABLE OF CONTENTS**
(continued)

Page

1.  Kilopass's Argument That the Invention of the Patents Is Reduction of the Number of Electrical Connections From Three to Two, Rather Than the Use of a "First Doped Semiconductor Region" Makes No Sense ........................................................38

2.  The District Court's Decision Should Not Be Reviewed *De Novo*........................................39

3.  The District's Finding That the Patents' Use of a "First Doped Semiconductor Region" Renders the Memory Cell Smaller was Well-Supported by Persuasive Evidence.............................41

C.  Absent Error of Law or Clear Error of Fact, This Court Should Not Substitute its Judgment for That of the District Court ...............................................44

D.  In Any Event, No Remand Is Required For the District Court to Tie The Fee Award to Kilopass's Wrongful Conduct....................................................48

II.  The District Court's Refusal to Award Full Fees Under the Hybrid-Fee Agreement was Premised on Legal Error and Should be Reversed .................................................51

1.  The District Court's Failure to Fully Compensate Sidense for Harms Caused is Directly Contrary to the Purpose Underlying Section 285 ................................54

2.  This Court's Precedent Requires Incorporation of the Hybrid-Fee Agreement into the Lodestar Analysis ......................57

# TABLE OF CONTENTS
(continued)

Page

3. The District Court Committed Clear
Legal Error by Ignoring the Hybrid-
Fee Agreement in its Lodestar Figure ........................59

CONCLUSION ................................................71

CERTIFICATE OF SERVICE ...........................................72

CERTIFICATE OF COMPLIANCE UNDER FEDERAL RULES OF
APPELLATE PROCEDURE 32(A)(7) ...............................................74

## CONFIDENTIAL MATERIALS STATEMENT

This brief contains confidential information that is subject to a protective order. The confidential information, which has been redacted on page 43, relates to the development of Sidense's technology, and is claimed by Defendant-Cross-Appellee Sidense under the district court protective order as confidential information. This information is claimed by Defendant-Cross-Appellee Sidense as highly sensitive in nature, is not publicly available, and has been designated as confidential.

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Albemarle Paper Co. v. Moody*,
  422 U.S. 405 (1975) ................................................................ 55

*Anderson v. Bessemer City*,
  470 U.S. 564 (1985) ................................................................ 40

*Beckman Instruments, Inc. v. LKB Produkter AB*,
  892 F.2d 1547 (Fed. Cir. 1989) ................................................ 49, 50, 61

*Bywaters v. United States*,
  670 F.3d 1221 (Fed. Cir. 2012) .......................... 6, 33, 57, 58, 59, 61, 63, 66, 69

*Carbino v. West*,
  168 F.3d 32 (Fed. Cir. 1999) .................................................... 35

*Cent. Soya Co. v. Geo. A. Hormel & Co.*,
  723 F.2d 1573 (Fed. Cir. 1983) ................................................ 55

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, No. CV 01-2223, 2015
  WL 4941793 (E.D. Pa. Aug. 19, 2015) ...................................... 66

*City of Burlington v. Dague*,
  505 U.S. 557 (1992) ............................................ 59, 64, 65, 66, 69

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990) ................................................................ 54, 60

*Eon–Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011) ................................................ 54

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ................ 40

*Highmark Inc. v. Allcare Health Management Sys.*,
  134 S. Ct. 1744 (2014) .......................... 4, 22, 32, 34, 36, 44, 53, 60

*Homeland Housewares, LLC v. Sorensen Research*,
  581 F. App'x 877 (Fed. Cir. 2014) ............................................ 57

# TABLE OF AUTHORITIES
(continued)

**Page**

*Kilopass Technology , Inc. v. Sidense Corporation*,
501 F. App'x 980 (Fed. Cir. 2013) ............................................................ viii, 21

*Kilopass Technology , Inc. v. Sidense Corporation*,
738 F.3d 1302 (Fed. Cir. 2013)................................................viii, 9, 10-14, 22, 45

*MarcTec, LLC v. Johnson & Johnson*,
664 F.3d 907 (Fed. Cir. 2012)...................................................................36

*Mathis v. Spears*,
857 F.2d 749 (Fed. Cir. 1988)......................................... 6, 33, 49, 50, 54, 55, 59

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
134 S. Ct. 1749 (2014) ................................................................... 22, 36

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
483 U.S. 711 (1987) ..................................................................................64

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010) ..................................................... 33, 60-65, 67, 69

*Pullman–Standard v. Swint*,
456 U.S. 273 (1982) ............................................................................40

*Raylon, LLC v. Complus Data Innovations, Inc.*,
700 F.3d 1361 (Fed. Cir. 2012)..................................................... 50, 54

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992)..............................................................49

*Special Devices v. OEA, Inc.*,
269 F.3d 1340 (Fed. Cir. 2001)............................................................49

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
135 S. Ct. 831 (2015) ........................................................ 3, 31, 35, 39

*United States v. Gypsum Co.*,
333 U.S. 364 (1948) ............................................................................40

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
395 U.S. 100 (1969) ............................................................................40

# TABLE OF AUTHORITIES
### (continued)

**Page**

**Statutes**

28 U.S.C. § 1295(a)(1)..............................................................................1

35 U.S.C. § 285 .............................................................................. passim

**Rules**

Fed. R. Civ. P. 52(a)(6)...........................................................................40

# LIST OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| Kilopass | Kilopass Technology, Inc. |
| Sidense | Sidense Corporation |
| Antitrust Action | *Sidense Corp. v. Kilopass Technology, Inc.*, Case No. 14-02238-SI (N.D. Cal.) (filed May 14, 2014) |
| '751 patent or '751 | U.S. Patent No. 6,940,751 |
| '757 patent or '757 | U.S. Patent No. 6,777,757 |
| '540 patent or '540 | U.S. Patent No. 6,856,540 |
| Kilopass Patents | U.S. Patent Nos. 6,940,751, 6,777,757, and 6,856,540 |
| '855 patent or '855 | U.S. Patent No. 7,402,855 |
| Sidense Patent | U.S. Patent No. 7,402,855 |
| Dentons | Dentons (f/k/a SNR Denton) |
| MoFo | Morrison & Foerster LLP |
| Perkins | Perkins Coie LLP |
| USPTO | United States Patent and Trademark Office |
| District Court | U.S. District Court for the Northern District of California (Illston, J.) |

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Sidense states that there have been two prior appeals in this case:

(1) *Kilopass Technology , Inc. v. Sidense Corporation*, Case No. 2013-1009, decided April 10, 2013, by a panel of Circuit Judges Rader, Lourie, and O'Malley, reported at 501 F. App'x 980 (Fed. Cir. 2013); and

(2) *Kilopass Technology , Inc. v. Sidense Corporation*, Case No. 2013-1193, decided Dec. 26, 2013, by a panel of Circuit Judges Rader, Lourie, and O'Malley, reported at 738 F.3d 1302 (Fed. Cir. 2013).

Sidense further reports that another action pending in the District Court for the Northern District of California, *Sidense Corporation v. Kilopass Technology, Inc.*, Case No. 14-02238-SI (N.D. Cal.) (Filed May 14, 2014) (the "Antitrust Action"), may be directly affected by this court's decision in this Appeal. In particular, Sidense's complaint in the Antitrust Action asserts Sherman Act claims premised on Kilopass's prosecution of baseless infringement claims in the patent suit underlying this Appeal. *See , e.g.*, A13478 ¶ 106 ("Kilopass has unlawfully attempted to monopolize the relevant market or submarkets by means of bringing, prosecuting and publicizing a sham objectively baseless lawsuit for patent infringement"). Kilopass has asserted its intention to deny that the District Court's "objective baselessness" ruling in the fee order from which Kilopass has taken this

Appeal, A23, collaterally estops Kilopass from re-litigating that issue in the

Antitrust Action.  Consequently, this Court's decision as to the District Court's

"objective baselessness" ruling may directly affect judicial economy of the

Antitrust Action.

## JURISDICTIONAL STATEMENT

Sidense agrees with Kilopass's Jurisdictional Statement.  OB at 3. In particular, this Court has jurisdiction under 28 U.S.C. § 1295(a)(1) because the parties timely appealed the District Court's order granting Sidense's motion for attorneys' fees under 35 U.S.C. § 285 and related order calculating such attorneys' fees

## INTRODUCTION

The underlying suit represents a reckless disregard for Sidense's right to be free from unreasonable patent litigation.  The "striking dearth of merit" to Kilopass's patent infringement claims shows that the District Court's exceptionality decision is correct.  Judicial Appendix at 38  ("A38").  Scrupulously adhering to this Court's prior opinion,[1] the District Court held that "Kilopass failed to conduct an adequate pre-filing investigation," as the only completed opinion of counsel stated that Sidense "would NOT infringe [Kilopass's] claims literally." [2] A23, A15.

---

[1] The District Court stated, "The following summary of Kilopass's pre-filing investigation is largely taken from the Federal Circuit's opinion in this matter." Judicial Appendix at p. 3 ("A3").

[2] This Court has noted that "intentional disregard of its counsel's opinion negates any inference of good faith."  *Cent. Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1577 (Fed. Cir. 1983).

Kilopass filed suit anyway, with a plan to "take out" Sidense and knowing that the lawsuit, whether meritorious or not, would degrade or even destroy Sidense as a competitor.

Kilopass pressed a baseless theory of literal infringement until the last possible moment, not conceding to the theory's impossibility until it was forced to at summary judgment. A11, A15-17. Moreover, Kilopass took inconsistent claim construction positions between the District Court and proceedings before the Board of Patent Appeals and Interferences ("BPAI"). Tellingly, Kilopass's opening brief does not dispute or even address the baselessness of its literal infringement claim.

Instead of defending its baseless literal infringement theory, Kilopass's appeal goes all in on re-litigating its repeatedly rejected doctrine of equivalence theory. According to Kilopass, the District Court erred as a matter of law subject to *de novo* review on appeal when, in assessing infringement under the doctrine of equivalents, it determined ***as a matter of fact*** that the "first doped semiconductor region" is responsible for the reduced size of the memory cell whereas, according to Kilopass, that reduced cell size is attributable to the inventors having reduced the number of electrical connections from three to two.

However, because the allegedly erroneous ruling on infringement by equivalents is based upon an alleged error of ***underlying fact***, the Supreme Court's recent *Teva* decision holds that such rulings must not be set aside unless the district

court's underlying factual finding is *clearly erroneous. Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015). Kilopass has altogether failed to show that the District Court's detailed, soundly reasoned and well-supported analysis finding that the "first doped semiconductor region" reduces memory cell size is "clearly erroneous."

Moreover, Kilopass's doctrine of equivalents argument—that the reduced cell size invention of the patent is based on reduction of electrical connections from three to two—lacks common sense since *the claims are not so limited*. If the invention of the patents is the reduction of electrical connections from three to two, common sense suggests that the patent claims should foreclose the use of three electrical connections, but they do not. By comparison, consistent with the invention of the patent being use of a "first doped semiconductor region," all claims of the patent are so limited. *Kilopass's appellate assertion to the contrary is frivolous.*

Finally, Kilopass argues that even if there is no error in the District Court's determination that Kilopass's infringement claims were objectively baseless, those claims were not *so* baseless as to justify the award. However, in its recent *Highmark* decision, the Supreme Court held that a district court's decision to award fees under § 285 is reviewable under a deferential abuse of discretion standard since district courts are better positioned than appellate courts to decide if

a case is exceptional. *Highmark Inc. v. Allcare Health Management Sys.*, 134 S. Ct. 1744, 1747 (2014).

Consequently, this Court should decline Kilopass's invitation to consider substituting its own subjective judgment for that of the District Court. Moreover, this Court has already once before made key rulings as to Sidense's claim for a § 285 award and, in making the present award, the District Court has scrupulously followed the tenets of that prior decision where, upon remand, this Court explicitly instructed the District Court to pay "particular attention ... to the objective merits of Kilopass's claims[.]"

There is no question that the District Court correctly found that Kilopass litigated an "exceptional case," especially under the new deferential standards promulgated by the Supreme Court. Unfortunately, however, as matters stand, litigation loser Kilopass has been the winner overall having used baseless infringement litigation quite effectively to degrade litigation winner Sidense as a competitor, and then having also used the present equally baseless appeal to play "keep away" with the District Court's § 285 award of attorneys' fees in the amount of $5,315,315.01, and costs in the amount of $220,630.53. Quite plainly, this portion of the District Court's award should be upheld.

Nonetheless, the District Court, did err when it failed to fully compensate Sidense for all fees incurred pursuant to its hybrid-fee agreement with counsel,

Kilpatrick Townsend & Stockton ("KTS").  Specifically, the District Court did not award fees actually incurred by Sidense, as it would not  incorporate the hybrid-fee agreement into the lodestar analysis because the District Court required evidence that this type of fee agreement is commonplace in the industry.  The hybrid-fee agreement allowed Sidense to pay only 50% of its legal fees on a monthly basis, with the remainder tied to a performance multiplier ranging from zero to 2.5x to be determined at the end of the case.  When KTS achieved "complete success," this triggered highest possible multiplier.  Had the District Court awarded Sidense an amount based upon the amount provided for in the hybrid-fee agreement, the award would have been $8,112,054.[3]

The District Court agreed with virtually all of Sidense's factual and legal arguments in support of the incorporation of the hybrid-fee agreement into the lodestar, but then ultimately refused to make the award based on a lack of evidence that such agreements are commonplace in the industry.  The District Court's holding is not only internally inconsistent with its own factual and legal analysis, but it contradicts this Court's precedent requiring (1) ***full compensation*** for parties

---

[3] A14570 (Administrative Motion to Correct Mathematical Error in Sidense's Accounting of Fees, Document 455) at 3:14-15 (reducing request based on hybrid-fee agreement down from $9,236,566). Although Sidense presented this motion three days before the Fee Calculation hearing, the District Court did not decide it, presumably because the District Court declined to incorporate the hybrid-fee agreement into the lodestar.

vexed by unreasonable patent litigation, *Mathis v. Spears*, 857 F.2d 749, 753 (Fed. Cir. 1988), and (2) the incorporation of fee agreements into the lodestar analysis, ***including*** those agreements with ***contingency elements***. *Bywaters v. United States*, 670 F.3d 1221, 1228 (Fed. Cir. 2012). The only outcome that satisfies both of these principles is incorporation of the hybrid-fee agreement into the lodestar. This Court should therefore reverse the District Court and award Sidense the full amount of requested fees.

## STATEMENT OF THE ISSUES

1.    Where Kilopass has not disputed the District Court's findings that it pursued a baseless literal infringement claim all the way to summary judgment, or that it engaged in "gamesmanship" by presenting conflicting claim construction theories between the District Court and the Board of Patent Appeals and Interferences, has Kilopass waived its right to dispute those issues?

2.    Where the claims of the patents-in-suit do not foreclose the presence of a third electrical connection, is it frivolous for Kilopass to argue that the "invention of the patents" is the reduction of electrical connections from three to two?

3.    If Kilopass's appeal is premised on an alleged error of law based upon an alleged error of underlying fact, may Kilopass seek *de novo* review of the entire legal issue, or must it demonstrate a clear error as to the underlying fact?

4.      Is the District Court's determination that Kilopass's doctrine of equivalents theories were objectively baseless, which is premised in part on finding that the "first doped semiconductor region" claim element reduces cell size, clearly erroneous?

5.      If Kilopass fails to establish that the District Court's award of attorneys' fees under § 285 is based upon an error of law, or clear error of fact, may Kilopass legitimately ask this Court to substitute its judgment for the District Court's discretionary determination to award § 285 fees, where the District Court's rationale for that award scrupulously follows this Court's mandate from the prior appeal, expressly includes this Court's extensive recitation of circumstances upon which its prior decision was based, carefully and reasonably analyzes each of Kilopass's arguments, and reaches well-reasoned conclusions to the contrary?

6.      Did the District Court err in failing to fully compensate Sidense for fees incurred resisting Kilopass's unreasonable and objectively baseless patent infringement suit, where Sidense incurred and has been paying those fees pursuant to a hybrid-fee agreement between Sidense and its counsel, wherein the hourly rate which Sidense was obliged to pay its counsel was negotiated, in a counseled negotiation, to be a variable rate based upon the measure of litigation success, merely because Sidense did not demonstrate that these custom-tailored hourly rates were rates which were "prevailing" in the legal profession?

## STATEMENT OF THE CASE

Sidense generally agrees with Kilopass's Statement of the Case. OB at 8-10. Additional statements with respect to the District Court's order granting Sidense's motion for attorneys' fees, and the subsequent order regarding calculation for those fees, however, are necessary for sufficient context.

On August 12, 2014, the District Court, exercising its sound discretion, granted Sidense's fee request, finding that the case was an "exceptional" case under 35 U.S.C. § 285. A14–25  Upon consideration of the totality of the circumstances, the District Court concluded that the case was "one that stands out from others" with respect to both the substantive strength of Kilopass's litigation positions—claims for literal infringement and claims for infringement under the doctrine of equivalents—and the unreasonable manner in which the case was litigated. *Id.*

At the District Court's request, the parties submitted additional briefing regarding the amount of the fee award. In particular, Sidense submitted briefing and supporting documentation ultimately resulting in an overall requested fee amount of $8,112,054 based on Sidense's hybrid-fee agreement with KTS. *See, e.g.*, A14567-70.

On March 11, 2015, following the additional briefing regarding the amount of the fee award, the District Court awarded Sidense attorneys' fees in the amount

of $5,315,315,01 and costs in the amount of $220,630.53. A50. The District

refused to award Sidense "fees associated with its contingency bonus" under its

hybrid-fee agreement with KTS. A45,

## STATEMENT OF THE FACTS

Sidense and Kilopass are competitors in the embedded non-volatile memory

("NVM") market. *Kilopass Technology , Inc. v. Sidense Corporation*, 738 F.3d

1302, 1304 (Fed. Cir. 2013). The patents-in-suit all relate to programmable

memory cells and arrays of such cells. *Id*. The programmable memory cells are

comprised of a transistor located at the cross point of a column bit line and a row

wordline. *Id*. The transistor has a gate formed from the column bit line and a

source diffusion connected to the row wordline. *Id*. The drain diffusion is left

"floating," *i.e.*, not connected to an electrical source. *Id.* The patented memory

cell is intended to be smaller than the memory cell of Kilopass's prior art 1.5T

patents. A8849-8850; A14012-14014; A95, 5:5-26. Kilopass has never denied the

substantial size difference.

All asserted claims of the patents require (1) a "row wordline" connected to

the "second doped semiconductor region" and (2) "first and second doped

semiconductor regions" that are (3) "in a spaced apart relationship." *Kilopass*, 738

F.3d at 1305. Sidense's 1T-Fuse cells, however, embody a shallow trench

isolation ("STI") region instead of a first doped region, and connect the second

doped region to the column bit line, not the row wordline.  *Id*.  These differences

formed the basis for the District Court's summary judgment of non-infringement

that concluded that Sidense's accused memory cells did not include any of the

aforesaid three claim elements, which the this Court summarily affirmed.  *Id.*

    ***Kilopass's flawed pre-filing investigation.***  The story of Kilopass's

misguided patent assertion begins in 2005.  In that year, Kilopass's founder and an

inventor on all three of the patents, Jack Peng, reviewed a Sidense international

patent application directed to protecting Sidense's competing 1T-Fuse memory

cell. *Kilopass*, 738 F.3d at 1305; A10580-A10581.  Peng believed that the 1T-Fuse

was similar to Kilopass's patented cells, except that Sidense used a split gate

implementation. A10580.  Peng contacted Perkins Coie patent attorney Chun Ng to

discuss potential infringement. *Kilopass*, 738 F.3d at 1305.   In emails to the

Perkins attorney, copied to Kilopass's CEO Bernie Aronson and CTO Harry Luan,

Peng explained that "[Kilopass] did not file [a] dedicated patent for this split gate

implementation" and that "we should [have] … a long time ago even though we

were very busy." *Id.*;  A6408.  According to Peng, it was not a priority to Kilopass

at that time because Sidense's "split gate [memory cell] is not self-aligned, *so their*

*practical cell size will be larger than [Kilopass's] 1.5T cell.*" *Id.* (emphasis

added).

Nonetheless, the Perkins attorney sent a letter advising Sidense that it "should be interested in obtaining a license to Kilopass's patents" or otherwise "provide [Kilopass] with an explanation of how these products avoid the claims" of the patents-in-suit.  Sidense responded on January 20, 2006 stating that "no products produced by Sidense … fall within the scope of the claims," noting:

> [E]ach [claim] require[s] that the transistor have (1) *first and second doped semiconductor regions* … and (2) *a second doped semiconductor region connected to the row wordline*. … Such elements are not present in Sidense's memory cell transistors. For at least these reasons, … we do not believe that any license of these patents is necessary.

*Kilopass*, 738 F.3d at 1305; A10590 (emphases added)).

After reviewing Sidense's response, the Perkins attorney sent the following email to Peng and Kilopass's CEO:

> Here is my report on Sidense's response to our charge of infringement. I still believe given our knowledge of Sidense's technology, that they infringe our patents. Please keep in mind that I am assuming that their memory design is the same as detailed in their patent application. … Note that it is possible that Sidense may have changed their memory design to be different from what is shown. … In speaking with Jack [Peng] earlier today, we speculated that Sidense may have eliminated the first doped region and replaced it with a shallow trench isolation [STI] of some sort. … *[I]f in fact they have eliminated the first doped region, then they would NOT infringe our claims literally. If that is the case, then we would have to go through a "reissue" proceeding in the patent office* that may take 2 years in order to modify our first doped region. … *The most crucial bit of*

> *information we need to find out is the design of their*
> *memory cell. We have been … assuming that their patent*
> *application shows their memory cell. This is not always*
> *the case and it would be good if we could find out*
> *definitively how their memory cell is constructed. I still*
> *feel strongly about our case if they are using the memory*
> *cell described in their patent application.*

*Kilopass*, 738 F.3d at 1305-6; A10601 (upper case emphasis in original, italics

emphasis added).

The email made clear that (1) the Perkins attorney's analysis up to that point

was based on the assumption that the design of Sidense's 1T-Fuse cell was the

same as the cell detailed in Sidense's international patent application; and (2) if

that assumption was incorrect, and Sidense had in fact replaced the first doped

region (*i.e.* the drain) with an STI region, then Sidense "would NOT infringe [the]

claims literally." *Kilopass*, 738 F.3d at 1306.

In June 2007, once Kilopass confirmed that Sidense had indeed replaced the

drain with an STI, the Perkins attorney then sent the following email to Kilopass

officials: "my preliminary review of all the Sidense materials indicates that *they*

*have redesigned their memory cell to avoid infringement of our patents. Or at*

*least make our case much tougher." Id.*; A10604 (emphasis added)).

Despite the Perkins attorney's advice, rather than seek reissue in the PTO,

Kilopass interviewed patent litigation counsel at Morrison Foerster (MoFo). On

March 19, 2008, counsel from MoFo emailed Kilopass's CEO the following:

> As we mentioned during the meeting, assuming
> Sidense's NVM product uses … [an] STI region[] (as
> opposed to two N+ regions) to define the channel below
> the gate … *Kilopass appears to have a valid claim that*
> *Sidense's NVM product is at least the "equivalent" to the*
> *invention claimed by claim 1* of Kilopass's '751 patent,
> and therefore that Sidense infringes that patent.
> As we also discussed, *the next step is for us to conduct a*
> *more detailed investigation and analysis to confirm our*
> *initial impressions*, which you asked us to complete
> before your April 2 meeting with Kilopass's Board.

*Kilopass*, 738 F.3d at 1306; A11487 (emphasis added), whereupon MoFo began its

"more detailed investigation." *Id.* However, on March 27, 2008, Kilopass

instructed MoFo to stop all work on the project. *Id*. at 1307; A11490-A11493.

The reason is unclear, but MoFo subsequently sent Kilopass an invoice for 44

hours of work "relating to Kilopass's investigation of potential infringement claims

against Sidense." *Kilopass*, 738 F.3d at 1307;  A11490).  The invoice was

accompanied by a "preliminary infringement chart for the '751 patent reflecting

[MoFo's] analysis." *Kilopass*, 738 F.3d at 1307.

The preliminary infringement chart provided an analysis concerning the

doctrine of equivalents, stating that "Kilopass appears to have a reasonable

argument that Sidense's field oxide region is equivalent to the doped region in

claim 1 of the '751 patent, and therefore satisfies this limitation." *Id.*; A11497.

With regard to literal infringement, the MoFo Counsel also opined:

> [I]f "doped region" is defined as an area on the
> semiconductor where the electrical properties have been

> changed, it may be difficult to argue that the field oxide
> region is a doped region.… If, however, "doped region"
> could reasonably be defined more broadly as simply an
> area to which a dopant is applied, then we may be able to
> argue that the field oxide region is a "doped region."
> Determining the potential viability of this argument will
> require additional investigation, technical feedback from
> Kilopass and possibly input from an independent expert."

*Id*.

As this Court observed, although MoFo's preliminary infringement chart opined favorably to Kilopass regarding the doctrine of equivalents, there is no evidence in the record that MoFo's analysis was complete at that time, nor is there any evidence that Kilopass considered MoFo's preliminary infringement chart in deciding to bring suit against Sidense. *Kilopass*, 738 F.3d at 1307. Moreover, there is no evidence that Kilopass informed MoFo about Mr. Ng's opinions or Mr. Peng's prior statements. *Id.* Although Kilopass retained MoFo to prepare an infringement analysis, it terminated that relationship only eight days later. *Id.* As this Court further observed, it does not appear that Kilopass was aware of how much work MoFo had done up to that point or that MoFo was even in the process of completing an infringement chart. *Id.* In other words, as this Court stated, it appears that Kilopass officials had already set their minds prior to learning of MoFo's infringement analysis. *Id.*

In October, 2008, Kilopass hired a new CEO, Charlie Cheng. Previously, Mr. Cheng co-founded a company called Lexra which, as it began to gain

marketplace traction, was sued for patent infringement by its larger more well-established competitor, MIPS.  A10608-11 at 30:18-33:17.  Lexra settled because it was "running out of money."  A10614-15 at 38:9-39:8.  Lexra lost sales because MIPS publicized the lawsuit.  A10615-17 at 39:15-41:25.  To settle the lawsuit, Lexra was forced to change its business model (A10612-13 at 36:13-37:10), and soon dissolved.  A10618-19 at 42:8-9; 43:1-4.

In October, 2008, Mr. Cheng's first presentation to the Kilopass Board noted that Kilopass needed a "***virtual monopoly***" to grow the business, (emphasis added), and the "Plan for October/Q4" was "***Get ready to sue Sidense***."  A10625-10626 (emphasis added.)  At the next month's board meeting, Mr. Cheng's presentation noted that, if Kilopass intended to grow, it would need to "***Take out Sidense***." A10671 (emphasis added).

As Kilopass was making final preparations to file a complaint against Sidense nearly a year and a half later, on March 25, 2010, Kilopass's CTO Harry Luan sent Mr. Cheng an email stating that "as we discussed, [Dentons patent litigator] Mark [Hogge]'s team is very comfortable with the reverse engineering work we did.  However, *they are still analyzing the claims of our 1T patent*. Before you get their formal analysis, I compiled two slides on our 1T patent vs. Sidense."  A11294 (emphasis added).  In slides attached to the e-mail, the CTO reported that the Dentons "[a]ttorneys *don't have a conclusion yet as to the reading*

*of first doped region and STI region*" and that their "formal analysis is in progress." A11296 (emphasis added). The CTO also reported that the "[r]everse engineering work shows that Sidense built OTP products that use exactly the same cell as disclosed in public literatures." *Id.*

In other words, the CTO reported that his reverse-engineering analysis revealed that Sidense had, as surmised by the Perkins attorney, "in fact eliminated the first doped region" so as to "NOT infringe [the Kilopass] claims literally." Despite the Perkins attorney's advice, the CTO opined that "[f]rom an *engineer's* perspective, we believe Sidense's cell is *at least equivalent* to that claimed by Kilopass's patent 6,940,751." *Id.* (emphasis added). And, despite having learned from Peng that there was a substantial size difference resulting from Sidense's use of an STI rather than a doped region, his "engineer's" analysis made no mention of the substantial size difference. It also ignored the MoFo channel stop theory of equivalence, but propounded another unsupportable theory, i.e. that the '751 patent disclosed "replacing" the first doped region with STI—an interpretation that the MoFo lawyers had discouraged. A11501 ("The '751 patent describes an embodiment that uses STI region *in addition* to the doped regions (*see* Figure 14 and 10:9-27 of the '751 patent), but doesn't claim this embodiment. This should not affect Kilopass's argument, however. *The STI region described in the 751*

- 16 -

*patent is used as a cell isolation region, where the doped/diffusion/field oxide (STI)*

*regions at issue in the here are used as the channel stops.*"  (emphases added).)

***Kilopass files suit.***  On May 14, 2010, Kilopass filed suit against Sidense

alleging infringement of Kilopass's '751 patent.  A137-253.  One month later, on

June 18, 2010, Kilopass filed an amended complaint adding allegations that

Sidense infringed the '757 and '540 patents and also adding four business tort

counts. A173-82.

Concurrently, Kilopass publicized its lawsuits and reexamination

proceedings (A10723-10729, A14095-14097), and then made express and implicit

threats of US patent infringement against Sidense's existing and potential

customers (A140704-140705), and threats of ITC and Japanese patent litigation

against Sidense's existing and potential customers outside the United States,

including in Japan.  *Id.*; A14128-14134.

This combination of litigation, publicity, and threats caused customers and

potential customers to shy away from Sidense and drove up Sidense's cost of doing

business, thereby depriving it of the capital needed to effectively compete against

Kilopass, and nearly drove Sidense out of business.  A14139, ¶¶ 2-3.

During the course of the litigation, the District Court learned that Kilopass

was making claim construction arguments to the USPTO Board of Patent Appeals

and Interferences (the "Board") in a concurrent *inter partes* reexamination, in order

to distinguish over a key piece of prior art, that were directly contrary to those being made to the District Court. A5990. The District Court admonished Kilopass for engaging in "gamesmanship." A5990-5991.

Additionally, the District Court ruled that Kilopass had improperly attempted to amend its infringement contentions to advance previously undisclosed theories under the doctrine of equivalents long past the applicable deadline and without the court's approval. A8847, 12:8-10. The District Court further noted that "Kilopass's assertion of a new theory of equivalence is particularly inappropriate in light of evidence that *Kilopass has known for many years that Sidense does not literally infringe its patents.*" *Id.* at n. 8 (emphasis added).

In its January, 2011, P.L.R. 3-1 Infringement Contentions, Kilopass had explained that the "function" of the first doped semiconductor region is to be a "channel-stop," and that the "way" it performs this function is by preventing electrical current from flowing in that region and the result is the end of the channel is defined. A1782, A1790. Sidense spent the next fifteen months defending against this theory, including serving invalidity contentions (A5038, ¶2, A5041), formulating its position on claim construction (A13127), deposing all of the named inventors as well as Kilopass's CTO and V.P. of Engineering (A6036 ¶10), and provided detailed interrogatory answers and expert reports articulating

why its accused products did not infringe.  A6366, A6376-6377, A7077-7078

¶217.

Then, Prof. Neikirk's April 13, 2012 expert report disclosed a ***different***

theory of equivalence, which stated that the "function" of the first doped

semiconductor region was to "geometrically delineate or define a channel region,"

and that the "way" it performs this function is by being separated from the other

doped semiconductor region, in the substrate adjacent to the gate, and the "result"

is to define the channel region. A7368-7370. Prof.  Neikirk testified that he had not

considered the "channel stop" theory in Kilopass's P.L.R. 3-1 Infringement

Contentions when forming his opinions.  A10930-10932, 30:5-32:13.  Kilopass

never sought leave to amend its PLR 3-1 Infringement Contentions but then relied

on Dr. Neikirk's "geometric" theory in opposition to Sidense's motion for

summary judgment.

     ***The District Court grants summary judgment.***  Despite Prof. Neikirk's

expert report, the District Court granted summary judgment of noninfringement as

to the "first doped semiconductor region" claim element. A8851.  In reaching that

decision, the District Court noted that Kilopass conceded that Sidense does not use

a "first doped semiconductor region," and thus this limitation is not literally

infringed. *Id*.

The District Court then picked apart Kilopass's shifting doctrine of equivalence theories. A8847-8848. It began by noting that Kilopass broke the local patent rules by amending its infringement contentions "far past the applicable deadlines without Court approval." A8847. In its timely contentions, Kilopass presented a "channel stop" theory of equivalency, arguing that the function of the "first doped semiconductor region" was to provide a channel stop by preventing current from the channel to flow in the area of the STI. A8847. Kilopass, however, did not even adhere to this underdeveloped theory in resisting summary judgment. *Id.* Instead, it conjured a new theory, this time focusing on "the geometry of the cell, rather than the electrical properties of the 'channel stop.'" *Id.* The District Court refused to endorse this disregard for the basic ground rules of patent litigation, and held that the "failure to provide or support an admissible equivalents theory warrants summary judgment." *Id.*

The District Court, of course, did not only find that the doctrine of equivalents theory was procedurally defective—it was defective on the merits as well. A8848. First, it was undisputed that the STI is an insulator, and that the "first doped semiconductor region" is, as its name implies, a semiconductor. *Id.* By the definition set forth at claim construction, a semiconductor is not an insulator, nor its equivalent. *Id.* The evidence likewise showed the substantial

- 20 -

differences between the components.  A7056 ("[I]nsulators have substantially

different characteristics from semiconductors"); A8848-A8849.

The District Court also noted that Kilopass ignored other substantial

differences between the first doped region and the STI at summary judgment, as

the first doped region rendered the cell smaller, where the STI had the opposite

effect, citing Kilopass's own patent specification and inventor testimony, as further

supported by Sidense's expert testimony.  A8849; A228 ('757 Patent at 4:45-47);

A6815; A6408; A7061 at ¶ 15; A7058 at ¶ 158.  Kilopass's attempt to overcome

these "numerous differences" with an overly broad "function-way-result" theory

was meritless, as it ignored the "way" of using semiconductive (rather than

insulative) material, and the "result" that it produces a higher density memory

array. A8849-50.  For all of these reasons, a "first doped semiconductor region"

was therefore neither present in Sidense's memory cell, nor equivalent to the STI

insulator.

Thus, after ruling that Kilopass had disavowed claim scope, striking

Kilopass's theories of equivalence, and holding them to be meritless in any event,

the District Court granted Sidense summary judgment of noninfringement. A8846.

Kilopass subsequently appealed the judgment to this Court, which summarily

affirmed the District Court's decision. *Kilopass Tech., Inc. v. Sidense Corp.*, 501 F.

App'x 980 (Fed. Cir. 2013).

***Sidense's Fee Request.***  Sidense filed a request for fees with the District Court, which initially denied finding the case "exceptional." A13040-41. Sidense appealed that decision to this Court. A13035-36. This Court vacated the District Court's denial of Sidense's attorneys' fees motion, and remanded for further consideration. *Kilopass*, 738 F.3d at 1311. In its order, this Court liberalized the applicable law as it applied to prevailing patent infringement defendants. *See generally id.* Shortly thereafter, the Supreme Court further liberalized the law, with its decisions in *Octane Fitness* and *Highmark*. Both this Court and the Supreme Court emphasized that the policy behind such awards was to compensate the prevailing defendant and deter similar conduct by patentees.

On remand, applying the more liberal legal standard, the District Court granted Sidense's request for attorney's fees, finding the case exceptional under 35 U.S.C. § 285. A13–24. The District Court, in a 25 page opinion, ordered that Kilopass pay Sidense attorneys' fees because the lawsuit "is 'one that stands out from others' with respect to both the substantive strength of Kilopass's litigating position and the unreasonable manner in which the case was litigated." A14.   The District Court concluded that Kilopass's theories of infringement, both literal and under the doctrine of equivalents, "were objectively baseless" and that Kilopass's claims for literal infringement "were exceptionally meritless." A23.

First, the District Court first found that Kilopass's claims for literal infringement of the patents-in-suit rendered the case exceptional. A15–17. Kilopass asserted literal infringement despite having no reasonable basis for making such an assertion. A15. Kilopass had proceeded with its claims for literal infringement, "despite the fact that one counsel had instructed Kilopass that there was no literal infringement and a different counsel had only speculated that there may be literal infringement, but stated that further research needed to be performed." *Id.* The District Court held that Kilopass's assertion of literal infringement at all "is evidence that it litigated this action in an unreasonable manner." A16. The District Court further found that "[t]he gamesmanship that Kilopass engaged in with respect to [the second doped region connected to a row wordline] claim limitation is also evidence showing that it has litigated this action in an unreasonable manner." A17.

The District Court also found that Kilopass "never had a legitimate basis" for asserting that Sidense infringed Kilopass's patents under the doctrine of equivalents. A17–23. Kilopass never received an opinion from any counsel (neither Perkins nor Morrison Foerester) that Sidense infringed Kilopass's patents under the doctrine of equivalents.  A18–19. Further, Kilopass withheld statements by the inventor of the patents from its outside counsel, including statements regarding substantial differences in size between the patented inventions and

Sidense's products. A19. Then, after initially asserting a "channel stop"
infringement theory under the doctrine of equivalents, Kilopass abruptly changed
course during expert discovery and attempted to assert a new, different theory of
infringement instead, which the District found to be objectively baseless.  A21.
Kilopass had no reason to explain why it needed to change its theory so late in the
case without following proper procedures to amend its contentions, which the
District Court found to be further evidence of its bad faith. *Id.*

   ***The Hybrid Fee Agreement.***  Having won its attorneys' fees motion,
Sidense then briefed the appropriate amount of the fee award.  Sidense sought
attorneys' fees based on a hybrid fee arrangement it had negotiated with its
counsel. After Kilopass filed the first Complaint in May 2010, Sidense soon
thereafter secured representation of its current counsel, Kilpatrick Townsend &
Stockton LLP ("KTS").  A14298. The initial fee agreement between Sidense and
KTS was based on a traditional hourly billing arrangement.  A14298 ¶¶ 2-4;
A14315, ¶¶ 34-35.  The month following this agreement, however, Kilopass
amended the Complaint to add infringement claims for two additional patents and
four new business tort claims.  A173, A176-A182.  Kilopass also began
publicizing the infringement litigation to scare off Sidense's customers.  A10723-
10729, A14095-14097.

Kilopass's litigation and market conduct became a crippling drain on Sidense's resources, and hampered Sidense's ability to stay up to speed in a budding high-technology market heavily dependent on intensive investment in research and development.  A14139. Sidense desperately needed an injection of venture capital to continue funding operations in light of legal expenses, but attracting investors under the specter of the patent suit was untenable.  A141298-A141299. Sidense, however, refused to falter in the face of Kilopass's pressure. Instead, Sidense sought an alternative to the existing fee arrangement with KTS, wherein it could lessen its legal fees on a monthly basis and reduce its total risk exposure.  *Id.* Sidense and KTS therefore began new negotiations for an alternative fee arrangement, with Sidense represented by independent counsel. A14298-14299 . This resulted in the hybrid "Contingent Fee Agreement" to supersede the initial fee structure. *Id.*

Despite its name, the "Contingent Fee Agreement" is not a pure contingency agreement, but rather a "hybrid" fee arrangement.  A14326-A14334. The agreement contained objective terms purposed to align the interests of client and counsel, with KTS agreeing to share in the risk of loss with its client.  *Id.*  Rooted in the hourly rate, the agreement called for Sidense to pay only 50% of hours billed on a monthly basis.  The remaining 50% would be left unpaid until the end of the case, at which time it would be tied to a performance-based multiplier that would

vary according to the degree of counsel's success or failure in the District Court. This ranged from a multiplier of 0 for a complete loss up to a multiplier of 2.5 for a complete success. The net result of this formula was that Sidense would pay something between 50% of standard rates and 175% of standard rates, depending upon the degree of success or failure. *Id*.; A14310-A14311; A14336-A14343, A14346.

When the Court granted the motion for summary judgment of noninfringement and dismissed the business tort claims with prejudice, the best possible payment outcome was achieved. This triggered the "Completely Successful Conclusion" criteria in the agreement, which called for a "success fee" equal to 2.5 times the unpaid 50% of standard rate fees. A14328; A14299-A14300. A few months later, Sidense and KTS reduced the success fee obligation to a pair of promissory notes, due December 31, 2014 and December 31, 2015, respectively. A14300; A14348-A14355, A14357-A14364. These are free-standing obligations not contingent upon any extraneous events, including the outcome of the present section 285 dispute. *Id*. The ultimate result of the hybrid-fee agreement is that Sidense will pay $8,112,054 to KTS for recoverable Sec. 285 fees and expenses related to the patent infringement case. A 14567-70; A14305-A14306, ¶¶ 4-5; A14326-A14334, A14366-A14465.

Sidense briefed the District Court on this hybrid fee agreement in its request for attorneys' fees. *See* A26–50. The District Court then issued an order on the appropriate amount of attorneys' fees to be awarded. *Id.*

In the order, the District Court first explicitly rejected Kilopass's argument that Sidense should not be awarded full attorneys' fees, but rather only certain partial fees. A36. The District Court specifically found that of the two circumstances where full fees may not be warranted, neither apply in this case. A36–37. Moreover, the District Court noted that a full award was appropriate here given, *inter alia*, "the striking dearth of merit to Kilopass's claims for both literal infringement and infringement under the doctrine of equivalents." A38.

Next, the District Court analyzed the hybrid fee agreement, and whether the agreement may be taken into account for calculating the lodestar. The District Court noted at the outset that "[t]he attorney-client fee arrangement can often provide valuable indication of the prevailing reasonable rate in the community." A38–39. Indeed, "negotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness in the market." A39. The District Court likewise noted that this Court has held that a contingency fee agreement "may be taken into account in the lodestar calculation." A39. As such, the District Court determined that it "may therefore consider the [hybrid-fee agreement] in determining the lodestar." A40.

"In so holding, the [District] Court recognize[d] the risk that, in the future, parties could structure attorneys' fees agreements in anticipation of fee shifting litigation, such that the agreements would no longer be a legitimate reflection of the prevailing rate in the community." A40. The District Court found that that was not the case here. *Id.* In particular, the District Court found that (1) Sidense's "decision to renegotiate its fee agreement with KTS was in large part motivated by financial strain arising out of the litigation instituted by Kilopass"; (2) the hybrid-fee agreement "was entered into at a time when the case law governing attorneys' fee shifting under § 285 imposed a significantly higher burden on the party requesting fees, therefore making it unlikely that Sidense was confident it would ever recover its fees"; (3) "Sidense executed two promissory notes in favor of KTS, making it financially liable regardless of whether it could recover fees under § 285"; and (4) "Sidense was represented by independent counsel when negotiating the [hybrid-fee agreement] with KTS, allowing it to exert its bargaining power, while mitigating the risk of potential conflict of interest." A40–41 (internal footnotes omitted).

These facts persuaded the District Court that the hybrid-fee agreement may be relied upon in determining the "reasonable" rate. A41. "The mere fact that Sidense and KTS chose to tether the rate to pre-specified litigation outcomes [did]

not render the [agreement] inherently unreliable or unrepresentative of the prevailing reasonable rate in this jurisdiction." A41.

Despite explicitly finding that the hybrid fee agreement was "solid evidence" of the reasonableness of the fees, and that the fee agreement should be considered in the lodestar analysis when determining the reasonable rate, the District Court did not apply these findings in its conclusion. Instead, the District Court declined to award the full amount of fees under the agreement because Sidense "failed to provide evidence that the prevailing rates in the community for attorneys of similar ability and expertise are variable in nature, and linked to pre-specified litigation outcomes." A40.

The District Court instead decided to compensate Sidense at only its lawyers' standard hourly rates, which were substantially less than the hourly rates Sidense actually paid, thereby failing to adequately compensate Sidense for no reason other than that Sidense and its lawyers had agreed upon a variable hourly rate dependent upon the degree of success. A42–45.

## SUMMARY OF THE ARGUMENT

Kilopass asserts that the District Court's § 285 discretionary award of attorneys' fees in the amount of $5,315,315.01, and costs in the amount of $220,630.53, should be vacated and remanded for determination of a smaller award in view of an alleged error of law in the District Court's 2012 decision

granting summary judgment as to noninfringement of the "first doped semiconductor region" claim element under the doctrine of equivalents.

According to Kilopass, the District Court erred as a matter of law subject to *de novo* review on appeal when, in assessing infringement under the doctrine of equivalents, it determined ***as a matter of fact*** that the "first doped semiconductor region" is responsible for the reduced size of the memory cell, whereas Kilopass asserts that this reduced cell size advantage is ***in fact*** attributable to the inventors having reduced the number of electrical connections from three to two. According to Kilopass, this alleged error caused the District Court to erroneously award fees and costs for the case as a whole, rather than for individual acts of misconduct.

As an initial matter, Kilopass has not disputed the District Court's findings that it pursued a baseless literal infringement claim all the way to summary judgment, nor does Kilopass dispute that it engaged in "gamesmanship" by presenting conflicting claim construction theories between the District Court and the Board of Patent Appeals and Interferences.  So Kilopass has waived the right to challenge fees and costs for these aspects of the case.

Likewise, Kilopass has not disputed that it disregarded the local patent rules when, in pursuing alleged infringement by doctrine of equivalents, it amended its infringement contentions "far past the applicable deadlines without court

approval." Kilopass has thus waived the right to challenge whatever fees costs are appropriate for this transgression as well.

Instead, as noted above, Kilopass is solely asking this Court for *de novo* error of law review of the District Court's doctrine of equivalents ruling based upon an alleged error of underlying fact. However, in the recent *Teva* decision, the Supreme Court held that such rulings will not be set aside in the absence of clear error in a district court's finding as to ***the underlying fact***, and Kilopass has altogether failed to show that the District Court's detailed and well-supported finding here that the "first doped semiconductor region" reduces memory cell size is "clearly erroneous."

Moreover, Kilopass's doctrine of equivalents argument – that the reduced cell size invention of the patent is based on reduction of electrical connections from three to two – makes no sense since the claims are not so limited. If the invention of the patents is the reduction of electrical connections from three to two, common sense suggests that the patent claims should foreclose the use of three electrical connections, but the claims of the Kilopass patents do not. By comparison, consistent with the invention of the patent being the use of a "first doped semiconductor region," all claims of the patent are so limited. In addition, the fact that memory cell size may be been reduced somewhat by reducing the number of electrical connections from three to two does not preclude further

reduction in memory cell size by inclusion of a "first doped semiconductor region" since there is no evidence that these two sources of reduced cell size are mutually exclusive.

Finally, Kilopass argues that even if there is no error in the District Court's determination that Kilopass's infringement claims were objectively baseless, those claims were not *so* baseless as to justify the award. However, in its recent *Highmark* decision, the Supreme Court has held that a district court's decision to award fees under § 285 is reviewable under a deferential abuse of discretion standard since district courts are better positioned than appellate courts to decide whether a case is exceptional. *Highmark Inc. v. Allcare Health Management Sys.*, 134 S. Ct. 1744, 1748 (2014).  Consequently, this Court should decline Kilopass's invitation to consider substituting its subjective judgment for that of the District Court.

In sum, at least to the extent the District Court has awarded Sidense attorneys' fees in the amount of $5,315,315.01, and costs in the amount of $220,630.53, the award should be upheld.

On the other hand, the District Court erred by failing to fully compensate Sidense for all fees incurred resisting Kilopass's baseless suit as reflected in hybrid-fee agreement.   The District Court's decision is contrary to this Court's precedent requiring (1) *full compensation* for parties vexed by unreasonable patent

litigation, *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988), and (2) the

incorporation of fee agreements into the lodestar analysis, ***including*** those

agreements with a ***contingency element.*** *Bywaters v. United States*, 670 F.3d 1221,

1231-1232 (Fed. Cir. 2012).

Supreme Court authority disfavoring after-the-fact contingency

enhancements does not counsel otherwise.  That authority disapproves of ***post-***

***lodestar*** enhancement for the risk inherent in plaintiff-side contingency work,

which is criticized for giving rise to "essentially arbitrary" fee awards conjured on

an "impressionistic basis."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 557-

558 (2010).

Sidense is in no way requesting an after-the-fact enhancement of the

lodestar.  Rather, Sidense instead seeks reimbursement of its actual legal expenses

via incorporation of the hybrid-fee agreement into the lodestar itself.  *See Bywaters*

*v. United States*, 670 F.3d 1221, 1228 (Fed. Cir. 2012).  The Supreme Court drew

***explicit distinction*** between these two types of agreements in *Perdue*, stating that

disfavor of pure plaintiff-side contingency enhancements does not equally counsel

against accounting for hybrid-fee agreements of the type here.  559 U.S. at 554-

556.

The District Court ***explicitly agreed*** with Sidense's interpretation of this

authority.  A38-41; *see also* A40 n. 4.  The District Court, however, refused to the

put these principles into practice.  Instead, the District Court would not credit the hybrid-fee agreement in the final lodestar calculation, holding that Sidense failed to submit evidence that this type of fee agreement is a common arrangement in the prevailing legal community.  In doing so, the District Court created a new requirement unknown in the case law, and contradicted its earlier finding that the agreement itself counted as "solid evidence" of the reasonableness of the fee request.

This Court should reverse the District Court for failing to square its fee award with its own factual and legal analysis.  The only outcome that fulfills both the purpose of § 285 as a remedy of full compensation and this Court's requirement for incorporation of fee agreements into the lodestar analysis is to award Sidense the full amount of its fees.  To hold otherwise is not only inconsistent with existing precedent, but is untenable policy since it tends to discourage a valuable defense tool in funding defenses to unreasonable claims of patent infringement.

## STANDARD OF REVIEW

Sidense agrees with Kilopass that an award of attorneys' fees under 35 USC § 285 is reviewed for abuse of discretion, *Highmark Inc. v. Allcare Health Management Sys.*, 134 S. Ct. 1744, 1748 (2014); and that the abuse of discretion

standard does not preclude an appellate court's correction of the district court's legal or factual error. *Id.* at 1748 n.2.

However, although issues of law are reviewed *de novo*, an underlying factual determination may not be set aside unless clearly erroneous. *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 837 (2015).

## ARGUMENT

### I.    The District Court Did Not Abuse Its Discretion In Awarding Attorneys' Fees Under Section 285.

#### A.    Kilopass Does Not Dispute That It Acted Unreasonably in Pursuing Objectively Baseless Literal Infringement Claims and Engaging in Litigation Misconduct

Kilopass has not disputed the District Court's findings that it pursued a baseless literal infringement claim all the way to summary judgment, nor does Kilopass dispute that it engaged in "gamesmanship" by presenting conflicting claim construction theories between the District Court and the Board of Patent Appeals and Interferences (BPAI). The District Court clearly explained why these actions justified its decision to find the case exceptional. A14-17.[4]

---

[4] "[C]ourts have consistently concluded that the failure of an appellant to include an issue or argument in the opening brief will be deemed a waiver of the issue or argument." *Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999).

A fees award is proper whenever a case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Highmark*, 134 S. Ct. at 1756. This standard encompasses all "unreasonable conduct," and empowers the district court to "determine whether a case is 'exceptional' in the case-by-case exercise of [its] discretion, considering the totality of the circumstances." *Id.* at 1756.

The pursuit of baseless literal infringement claims through summary judgment "sufficiently set[s] itself apart from the mine-run cases to warrant a fee award." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014).. To hold otherwise would make it "ordinary" for a plaintiff to tax a defendant with meritless theories of recovery, so long as it surrenders the baseless claim at the summary judgment stage. Indeed, "persist[ing] in advancing unfounded arguments that unnecessarily extended [] litigation and caused [Sidense] to incur needless litigation expenses" is "vexatious conduct [that] is, by definition, litigation misconduct" that can "support[] [a] district court's determination that [a] case is exceptional." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920-21 (Fed. Cir. 2012).

Kilopass's conduct litigating its doctrine of equivalents claims was likewise prejudicial to Sidense, and "sets itself apart" from the run-of-the-mill patent

case.  Kilopass disregarded the local patent rules where it amended its infringement contentions "far past the applicable deadlines without Court approval" in supporting the "geometry of the cell" theory.  A8847.  Kilopass barely mentions this inconvenient ruling in its brief, making only a half-hearted attempt to argue that the theories are not in fact distinct.  Its own expert, however, admitted that he never even "considered" the "channel stop" theory, undermining any argument that it is not substantially different from the "geometry" theory.   A10930-10932 (p. 30 l. 5-p. 32 l. 15) .  All of this confirms that the District Court acted in its sound discretion by finding that Kilopass's lack of regard for the local patent rules constitutes "out of the ordinary" litigation, completely separate and apart from its substantive decision that the theory is baseless.  *Id.*

Thus, there is no dispute that Kilopass (1) pressed a meritless literal infringement theory all the way through expert discovery; (2) presented conflicting claim construction theories between the District Court and BPAI; and (3) never submitted a procedurally valid doctrine of equivalent theory in resisting summary judgment.  Sidense need not belabor the point—the totality of these circumstances are a sufficient basis for this Court to uphold the exceptionality finding.

### B. The District Court Correctly Determined That Kilopass's Claims of Infringement Under the Doctrine of Equivalents Analysis Were Objectively Baseless

#### 1. Kilopass's Argument That the Invention of the Patents Is Reduction of the Number of Electrical Connections From Three to Two, Rather Than the Use of a "First Doped Semiconductor Region" Makes No Sense

Kilopass argues that the District Court erred in finding its infringement claims under the doctrine of equivalents objectively baseless because the invention of the patents is the reduction of the number of electrical connections from three to two, rather than use of a first doped semiconductor region. *See, e.g.*, OB at 42.

This defies common sense and basic patent law. If the invention of the patents were the reduction of electrical connections from three to two, common sense suggests that the patent claims should foreclose the use of three electrical connections, but they do not. If an accused devise had a third electrical connection, this would not avoid infringement of any of the patent claims. By comparison, all claims require a "first doped semiconductor region." A7025 ¶59; A7026-7027 ¶¶ 65-66. If an accused device did not have a "first doped semiconductor region," it would not infringe any claim. *See id.* Common sense suggest that the invention of a patent is not something like elimination of a third connection that is ***not essential*** to the patent claims but is something (like a "first doped semiconductor region") that ***is essential*** to the patent claims.

Moreover, while the inventors of the patents agree that inclusion of the "first doped semiconductor region" is to enhance memory cell density (A8626; A14564-14565), no inventor has supported Kilopass's "reduced electrical connections" theory of invention.

Finally, if (as all agree) the first doped semiconductor region serves no electrical function, then what is its purpose?  Why would a chip designer include a feature that has no electrical function?  There is no logical reason for its presence in the memory cell other than to reduce cell size.

Kilopass's argument is thus frivolous and makes no sense.

## 2.    The District Court's Decision Should Not Be Reviewed *De Novo*

According to Kilopass, the District Court's decision should be reviewed *de novo* because it was based upon an error of law, *i.e.* an erroneous doctrine of equivalents analysis.  However, Kilopass argues that the District Court's doctrine of equivalents analysis is erroneous because it is based upon the ***fact*** that cell size reduction of the patent is a function of the first doped semiconductor region whereas, according to Kilopass, it is a "***fact*** that size reduction in the patent is accomplished by reducing the number of electrical connections, not as a function of the first doped semiconductor region." OB at 36 (emphasis added).

Although issues of law are reviewed *de novo*, an underlying factual determination may not be set aside unless clearly erroneous.  *Teva*

*Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 837 (2015). Federal

Rule of Civil Procedure 52(a)(6) states that a court of appeals "must not ... set

aside" a district court's "[f]indings of fact" unless they are "clearly erroneous."

The Rule sets forth a "clear command." *Anderson v. Bessemer City,* 470 U.S. 564,

574 (1985). "It does not make exceptions or purport to exclude certain categories

of factual findings from the obligation of a court of appeals to accept a district

court's findings unless clearly erroneous." *Pullman–Standard v. Swint,* 456 U.S.

273, 287 (1982). Accordingly, the Rule applies to both subsidiary and ultimate

facts. *Ibid.* When reviewing the findings of a " 'district court sitting without a jury,

appellate courts must constantly have in mind that their function is not to decide

factual issues *de novo*.' " *Anderson,* 470 U.S. at 573 (quoting *Zenith Radio Corp.*

*v. Hazeltine Research, Inc.,* 395 U.S. 100, 123 (1969)). Review of factual findings

for clear error and legal conclusions *de novo* is the "ordinary" standard for courts

of appeals. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947–948, 115

S.Ct. 1920, 131 L.Ed.2d 985 (1995). "A finding is 'clearly erroneous' when

although there is evidence to support it, the reviewing court on the entire evidence

is left with the definite and firm conviction that a mistake has been committed."

*United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Consequently, Kilopass is not entitled to a *de novo* review of the District Court's doctrine of equivalents analysis—instead, Kilopass must prove that the District Court's analysis was clearly erroneous—a task it has failed to perform.

### 3. The District's Finding That the Patents' Use of a "First Doped Semiconductor Region" Renders the Memory Cell Smaller was Well-Supported by Persuasive Evidence

The District Court found that use of a "first doped semiconductor region" renders the memory cell smaller and provided a detailed explanation of its rationale at A8849-A8850 ("Kilopass also ignores the not-insubstantial difference that its use of a first doped semiconductor region, rather than an STI, renders its memory cell smaller.").  The District Court attributes the smaller cell size of the patent to two advantages of the "first doped semiconductor region, i.e.,: (1) the first doped region allows the memory cell to be smaller because it can be self-aligned, whereas Sidense's STI region is mask aligned; and (2) the first doped region allows the memory cell to be smaller because the first doped regions of adjacent memory cells can be combined.  *Id.* at n.9.[5]

---

[5] In addition to finding that the patents' use of a "first doped semiconductor region" renders the memory cell smaller, the District Court stated, "The use of only two connections rather than three enhances the density of the memory device, making it smaller."  A7856-7857 ¶ 35; A8837 at 2, fn. 2.  These findings are not inconsistent, since they are not mutually exclusive, nor did the District Court so find.  And Kilopass has never argued otherwise.

These findings are fully supported by the record.  Unlike Professor Neikirk–—who conclusorily attributes the reduction in external connections to "density" and fails to explain how, if at all, this would result in a smaller cell size—–Dr. Gosney explains *in detail* why use of a "first doped semiconductor region" allows the memory cell to be manufactured in a self-aligned process for higher density and smaller cell size, whereas Sidense's use of STI requires mask-alignment which results in a substantially larger cell size.  Specifically, Dr. Gosney (1) explains self-alignment versus mask- alignment *in detail* at A6957-6961  ¶¶ 154-157; (2) supports that explanation with references to a leading treatise on semiconductor device physics (*id.* at ¶ 156); (3) explains that Figure 2 of the asserted patents demonstrates that the memory cell of the patents is self-aligned and that this was confirmed by inventor Peng (*id.* at ¶ 158); (4) provides a detailed example of size-increasing overlap at the STI/gate interface in a mask-aligned process (*id.* at ¶¶ 159-160); and (5) explains that the STI/gate region of the accused Sidense's cell is mask-aligned (*id.* at ¶ 161).

Dr. Gosney then provides a detailed explanation of his conclusion that use of a "first doped semiconductor region" results in a substantially smaller memory cell than use of STI, because use of STI requires mask-alignment which requires overlap at the STI/gate interface.  A6961-6965 at ¶¶ 162-167. Dr. Gosney illustrates his conclusion by comparing layouts of two Kilopass test chips, one

*Confidential Material Redacted*

which used a self-aligned "first doped semiconductor region" and the other which used mask-aligned STI in place of the self-aligned "first doped semiconductor region".[6]  *Id*. at ¶ 163.  Dr. Gosney opines that because Kilopass's "bridge" cell, similarly to the accused Sidense cell, replaces the first doped semiconductor region with STI, it bears sufficient similarity to the accused Sidense memory cell for the purpose of illustrating the added dimensional separation (i.e. size difference) resulting from use of a mask-aligned versus self-aligned cell design/process. A6962-6963 at ¶¶ 164-65.  Dr. Gosney also compares the layout of Kilopass's "bridge" cell to the layout of Sidense's cell and finds them comparable.  *Id*.  In conclusion, Dr. Gosney is satisfied that comparing the size differences between these two Kilopass test chips serves as a reasonable proxy for the size difference between the patented Kilopass memory cell and Sidense's mask-aligned STI memory cell accused of infringement.  A6963-6964 ¶¶ 165-167.

In addition, Dr. Gosney compares the chips' layouts, finding that the size of Sidense's mask-aligned 90 nm single transistor (1T) cell, which is 1.05 x 0.46 (um)$^2$ is substantially larger[7] than Kilopass's self-aligned 90 nm two transistor (2T)

---

[6] This latter test chip was Kilopass's so-called "bridge" cell – a cell design which Kilopass tested and abandoned without patenting (*see, e.g.* A10578¶¶ 1, 3; A10576; and A10601, ¶ 5].

[7]

cell which is only 0.93 x 0.36 (um)[2]. A6960-69644 ¶¶ 160-167. This is consistent with inventor Peng's observation that, because the Sidense cell is "not self-aligned, their practical cell size will be larger than our 1.5 T cell." A6408.

### C. Absent Error of Law or Clear Error of Fact, This Court Should Not Substitute its Judgment for That of the District Court

Kilopass argues that "[e]ven if the district court's conclusion on the doctrine of equivalents issue was correct, it was not so obviously correct that Kilopass's failure to predict before filing this lawsuit that the district court would later so rule renders its entire case frivolous." OB at 36.

The Supreme Court has made it clear that a district court's decision to award fees under § 285 is reviewable under the deferential abuse of discretion standard. *Highmark Inc. v. Allcare Health Management Sys.*, 134 S. Ct. 1744, 1748 (2014) ("the district court is 'better positioned' to decide whether a case is exceptional"). Kilopass is expressly inviting the Court to substitute its judgment for that of the District Court. This Court should decline that invitation.

The District Court has carefully considered all the facts and circumstances, analyzed each aspect of Kilopass's pre-filing investigation in detail, scrupulously adhered to this Court's mandate, and reached well-reasoned and eminently reasonable conclusions as to each. For this reason, and because the District Court

has been dealing with this case since May 2010, the Court should honor the District Court's decision.  A3-A7.

The District Court's analysis was an exemplar of proper analysis.  It began its analysis by setting forth an *extensive* summary of Kilopass's so-called "pre-filing investigation," which it characterized as largely taken from the Federal Circuit's opinion in this matter.  *See Kilopass*, 738 F.3d at 1305-07.  A3-A7.  It then carefully analyzed each phase of the alleged pre-filing investigation (A17-A23) and concluded that "Kilopass never had a legitimate basis for asserting that Sidense infringed the patents-in-suit under the doctrine of equivalents."  A17.  It concluded that the only advice the Perkins counsel provided is that Sidense's technology does not literally infringe, but was not engaged to assess infringement by equivalents and that the only advice Perkins gave on that subject was its suggestion to seek a reissue.  A18.

As to advice from MoFo, after consideration of the facts and all of Kilopass's arguments, (A17- A21), the District Court felt,

> it was not reasonable for Kilopass to rely on the MoFo opinion because it was not complete and because Kilopass had failed to provide MoFo with all relevant facts allowing MoFo to perform a proper analysis. Moreover, the opinion was never confirmed by an independent technical expert. [A22, fn. 13]  In addition, the opinion was objectively baseless because it did not take into account the size difference between the accused technology and the patents-in-suit.

A21-A22.  As to advice from Kilopass's CTO, Dr. Luan, the District Court found that he  had a stake in the outcome and was not objective (*id*.); and that there was no evidence he confirmed  the MoFo "channel stop" theory.  *Id*.

In conclusion, the District Court found that, in sum, that Kilopass relied upon three theories of infringement under the doctrine of equivalents: (1) MoFo's "channel stop" theory, (2) Dr. Luan's theory, and (3) Prof. Neikirk's theory (A23) and that each of those theories was objectively baseless because none of them took into account the size difference between the accused technology and the claimed invention.  *Id*.  The District Court also found that none of the infringement theories explained how it was possible that the resulting size difference could be considered insubstantial in light of the patent's criticism of prior art having larger cell sizes and Mr. Peng's statements.  *Id*.  The District Court also noted that Kilopass had provided no evidence showing that insulators are the equivalents of semiconductors.  A12.

For these reasons, this Court should affirm the District Court's decision to award attorneys' fees and not undertake to substitute its own judgment for that of the District Court.

That said, Kilopass can hardly be heard to complain of a "failure to predict" the District Court's unfavorable ruling on the doctrine of equivalents issue, Kilopass had no good reason to predict a favorable ruling on that issue.  There is

further no reason to believe that Kilopass actually *did* predict a favorable outcome. To the contrary, the evidence shows that Kilopass recklessly pursued its infringement claims with knowledge, based on CEO Charlie Cheng's experience at Lexra, that even a meritless lawsuit would have a devastating effect on Sidense; and that whatever hardships might befall Sidense would likely redound to Kilopass's benefit—as certainly occurred.[8]  For this reason, even though the lawsuit was a litigation failure, it was a great business success, as Mr. Cheng had good reason to expect.

There is no evidence that Kilopass ever had a reasonable basis for predicting success on this issue, and substantial evidence shows that Kilopass was motivated to pursue its infringement case without regard to whether it had a reasonable likelihood of success on the merits.

---

[8] The lawsuit badly harmed litigation winner Sidense, who fell far behind Kilopass and had only limited success recapturing customers lost during the lawsuit. A14139-14140. [June 27, 2014 Declaration of Xerxes Wania in Support of Sidense Corp.'s Renewed Motion for Attorneys' Fees—note reductions of confidential information in public version] at ¶¶ 2-8. In the meantime, litigation loser Kilopass's business prospered. Id. Indeed, on April 15, 2013, only five days after this Court affirmed the District Court's judgment of noninfringement, litigation loser Kilopass boasted, "Kilopass continues to grow. … We had our best Q1 quarterly results ever on our baseline licensing business; up by 35% over the same period in the prior year. … With the recent $8 million funding, we are accelerating the expansion of the product roadmap beyond antifuse NVM."  A14017.

**D.**    **In Any Event, No Remand Is Required For the District Court to Tie The Fee Award to Kilopass's Wrongful Conduct**

Kilopass's final argument that remand is required for the District Court to tie and limit the fee award to only specific instances of Kilopass's wrongful conduct ignores the District Court's legal and factual findings, the vast majority of which Kilopass does not contest, as well as controlling precedents from this Court.

The District Court found that this case "stands out from others with respect to the substantive strength of plaintiff's litigating position and the unreasonable manner in which the case was litigated" for ***numerous, different reasons***. A23–24. In particular, with respect to the substantive strength of Kilopass's positions, the District Court found that each and every theory of infringement Kilopass asserted—including each of Kilopass's three theories of infringement under the doctrine of equivalents—was "objectively baseless." A23. Moreover, the District also found that "Kilopass litigated the present action in an unreasonable manner by failing to conduct an adequate pre-filing investigation [and] shifting its theories of infringement late in the litigation and without following the proper procedures for amendment of contentions." A23–24. Based on the totality of the circumstances, the District Court, exercising its sound discretion, determined that it need not "parse through Kilopass's actions to determine the cost associated with every discrete instance of 'exceptional' conduct" because such an analysis would "not

produce a drastically different result in this case." A38.

In *Mathis*, this Court expressly held that the purpose of § 285 is to "***make whole*** a party injured by an egregious abuse of the judicial process." *Mathis v. Spears*, 857 F.2d 749, 758 (Fed. Cir. 1988) (emphasis added). This Court has since identified only two circumstances in which full fees may not be warranted: (1) when litigation conduct is the ***sole basis*** for deeming a case exceptional; and (2) when the injured party only ***partially*** prevails on the patent claims at issue. *Special Devices v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001); *see, e.g.*, *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553–54 (Fed. Cir. 1989); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 831 (Fed. Cir. 1992).

Neither of these circumstances applies to this case. As the District Court determined, Kilopass's litigation conduct "was ***not*** the sole basis for deeming the case exceptional." A37 (emphasis added). Indeed, Kilopass does not argue that its misconduct was the sole basis for the exceptional finding, nor otherwise dispute the District Court's finding that Kilopass's literal infringement claims were objectively baseless, as discussed *supra*. And the District Court explicitly found that full fees were warranted in view of the "striking dearth of merit to Kilopass's claims for ***both*** literal infringement and infringement under the doctrine of equivalents." A38. Additionally, "Sidense ultimately prevailed on ***every claim*** asserted by Kilopass, which the [District] Court characterized as 'exceptionally

meritless' and 'objectively baseless.'" A37 (emphasis added). Indeed, this Court

previously confirmed that Sidense prevailed completely as a defendant to all patent

claims, distinguishing this case from *Beckman Instruments*.

In sum, as confirmed by the District Court, and discussed *supra*, Kilopass

pressed baseless claims—under each theory of literal infringement and under the

doctrine of equivalents—from the outset of the litigation in an abuse of the judicial

process, and compounded the issue with uncontested litigation misconduct. As

such, the fee award here must make Sidense "whole" as Sidense prevailed on all

the patent claims at issue.  Indeed, as recognized by this Court, the purpose of

§ 285 is deter the improper bringing of unwarranted lawsuits (like Kilopass's suit

here), compensate the prevailing party—Sidense—for its monetary outlays in

defense of the suit, and, overall, prevent "gross injustice" to the alleged infringer.

*Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1372–73 (Fed.

Cir. 2012); *Mathis*, 857 F.2d at 758.

In light of this Court's controlling precedents and the principles underlying

§ 285, and upon the totality of the circumstances, the District Court did not err in

determining that it need not "parse through Kilopass's actions to determine the cost

associated with every discrete instance of 'exceptional' conduct" because such an

analysis would "not produce a drastically different result in this case." A38.

**II.     The District Court's Refusal to Award Full Fees Under the Hybrid-Fee Agreement was Premised on Legal Error and Should be Reversed**

Kilopass set out to destroy Sidense with the filing of this lawsuit.  Lacking any justifiable theories of infringement, Kilopass mobilized for a blitzkrieg of litigation with the end goal to "Take Out Sidense."  A7.  In its opinion finding the case exceptional, the District Court recounted Kilopass's disregard for Sidense's right to be free from unreasonable patent litigation, which it deplored as "draconian" at oral argument.  A23-24; A14545, 21:16-22.  Kilopass failed to conduct an adequate pre-filing investigation, pursuing a theory of literal infringement despite the opinion of counsel that Sidense "would NOT infringe [Kilopass's] claims literally."[9]  A15.  The substantive literal infringement case was not only "objectively baseless" on the merits, but Kilopass's adoption of inconsistent claim construction positions between the District Court and the BPAI proceedings amounted to "gamesmanship," demonstrating that Kilopass "litigated this action in an unreasonable manner."  A15-17.  Kilopass also "relied on and presented three different theories" under the doctrine of equivalence—all three of which were inconsistent with one another— and all three "objectively baseless."

---

[9] This Court has noted that "intentional disregard of its counsel's opinion negates any inference of good faith."  *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed. Cir. 1983).

A23.  Overall, the "striking dearth of merit to Kilopass's claims" justified an exceptional case finding, and required Kilopass to compensate Sidense.  A38.

When the moment came for the actual calculation of fees, however, the District Court balked at full compensation.  Specifically, the District Court did not award Sidense the actual fees it incurred under its hybrid-fee agreement with KTS. A45-46.  That decision was not the result of finding that the hybrid-fee agreement itself was an unreasonable arrangement in light of the circumstances of this case. *See* A38-41.

To the contrary, the District Court held that the hybrid-fee agreement "may be relied upon in determining the 'reasonable' rate," and there was nothing "inherently unreliable or unrepresentative" about it.  A41.  In particular, the District Court found that the hybrid-fee agreement "was in large part motivated by financial strain arising out of the litigation instituted by Kilopass,"  the hybrid-fee agreement was executed at a time when § 285 case law "imposed a significantly higher burden on the party requesting fees, therefore making it unlikely that Sidense was confident it would ever recover its fees,"  Sidense would be financially liable "regardless of whether it could recover fees under § 285" due to the two promissory notes it executed in favor of KTS,  and Sidense retained "independent counsel" when negotiating the hybrid-fee agreement, "allowing it to

exert bargaining power, while mitigating the risk of a potential conflict of interest." A40–41.

Despite these findings, however, the District Court held that Sidense failed to provide extrinsic evidence that hybrid-fee arrangements are sufficiently commonplace to justify incorporation of Sidense's hybrid-fee agreement into the lodestar analysis. A45-46.

As explained below, this ruling fails to abide by the central purpose of § 285, which is to provide compensation for harm caused by unreasonable patent litigation. The ruling is also inconsistent with this Court's "lodestar" precedent, which counsels incorporation of the agreement into the fee calculation, and the District Court's own findings. The District Court actually sided with Sidense on all legal and factual issues in dispute: (i) the hybrid-fee agreement was "solid evidence" of reasonableness, (ii) Sidense should be compensated for all "patent-related" expenses caused "but for" the suit, and (iii) Supreme Court lodestar precedent found hybrid-fee agreements, like the agreement here, to be distinguishable from the disfavored contingency enhancements. A35-41, A37.

Because the District Court's denial of the full fee request cannot be rationally squared with legal precedent, the District Court's own findings, nor sound principles of patent policy in an era of abusive patent litigation, this Court should reverse the District Court and make Sidense whole. *See Highmark Inc. v.*

*Allcare Health Mgmt. Sys., Inc.*, --- U.S. ---, 134 S. Ct. 1744, 1748 n.2 (2014) ("The abuse-of-discretion standard does not preclude an appellate court's correction of a district court's legal or factual error"); *see also Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.").

> **1.    The District Court's Failure to Fully Compensate Sidense for Harms Caused is Directly Contrary to the Purpose Underlying Section 285**

The District Court's holding is directly contrary to the purpose of § 285, which is only vindicated if Sidense is awarded the full amount of fees expended in this case. *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (explaining that Congress codified § 285 to make a prevailing defendant "whole").  The statute is intended to "reimburse a *party* injured when forced to undergo an 'exceptional' case," *Id.* at 753 (italics in original),  as § 285 recognizes "the particular strain that meritless patent litigation bears on judicial and party resources."  *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1373 (Fed. Cir. 2012) (J. Reyna, concurring in part and dissenting in part); *see also Eon–Net LP v. Flagstar Bancorp,* 653 F.3d 1314, 1327 (Fed. Cir. 2011) (noting the burden of unnecessarily requiring a "district court to engage in excessive claim construction before it is able to see the lack of merit of the patentee's infringement allegations").

This Court therefore applies the "general rule" to § 285 that "when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury." *Mathis*, 857 F.2d at 753 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-19 (1975)); *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) ("The purpose of § 285 is to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit.").

Here, a wrong has been done, and the only compensation equal to the injury is the full award of fees incurred by Sidense. In *Mathis*, this Court recognized the harm caused where the plaintiff "severely injured" a defendant by "forc[ing] it to defend, at monstrous expense, its right freely to compete." 857 F.2d at 753-54. That harmful conduct justified complete recompense of all monetary outlays connected with that suit. *Id.* Sidense is in a position analogous to the defendant of *Mathis*. Sidense was on the receiving end of a baseless patent suit filed with the express purpose of destroying it as a competitor. *See* A3–12; *see, e.g.*, A7 (Kilopass's CEO: "Get ready to sue Sidense"; "Take out Sidense"). And Kilopass nearly pulled it off, as Sidense's resources were drained to the point that it was forced to enter into the hybrid-fee agreement as an alternative fee arrangement. *See* A33-34, 40. Like the defendant in *Mathis*, Sidense should thus be "made whole" with a fee award offering it complete relief for the harm it suffered.

The District Court agreed with this notion in principle, stating that "Sidense should be compensated for ***all patent-related litigation expenses*** it would not have had to undertake, but for Kilopass's misconduct." A37. Those expenses necessarily include ***all fees*** that are owed—and will be paid as a result of the promissory notes—by Sidense to KTS under the hybrid-fee agreement. To quote the District Court: "Sidense would not have incurred any [of these] legal costs were it not for Kilopass's claims of infringement. Sidense is therefore entitled to all reasonable attorneys' fees arising out of the patent-related litigation. This holding fulfills § 285's dual goal of deterrence and restitution." A37.

Yet the District Court stopped short of meeting this standard. This was out of a supposed deficiency in evidentiary proof, but there is no evidentiary dispute that the hybrid-fee agreement arose from Sidense's need to defend against the meritless litigation foisted upon it by Kilopass. *See* A33-34, 40. There is no lack of evidence that Sidense actually incurred and is indeed paying the fees it requests. *See* A41. The District Court's decision to stop short of providing full compensation impairs the ultimate purpose of § 285 to fully compensate litigants wronged by unreasonable litigation.

**2.    This Court's Precedent Requires Incorporation of the Hybrid-Fee Agreement into the Lodestar Analysis**

Awarding Sidense the full amount of fees incurred in this case is the only outcome that satisfies both the restorative goals of § 285 and this Court's jurisprudence governing awards of attorney fees.  Attorney fees awards are determined by the "lodestar" method, i.e., "the guiding light of its fee-shifting jurisprudence." *Bywaters v. United States*, 670 F.3d 1221, 1228-1229 (Fed. Cir. 2012).  When calculating the lodestar, courts consider the amount at stake and results obtained for the client, the sophistication of the work, the number of hours reasonably expended, the prevailing forum rates, and, especially pertinent to the instant motion, the ***actual fee agreement between the firm and client***.  *See id.* at 1231-32.

Here, there is an explicit fee agreement between Sidense and KTS, and this Court's authority dictates that it must be incorporated into the lodestar analysis— the contingency element included.[10]  Indeed, in *Bywaters*, this Court reversed the district court for arbitrarily departing from the lodestar, with explicit instructions for the district court to account for "the [contingency] fee agreement in calculating the lodestar figure." *Id.* at 1232.  The district court had initially calculated the

---

[10] Although *Bywaters* is not a patent case, this Court generally applies the law of lodestar equally to all attorney fee disputes.  Id. at 1228.  To that end, this Court relied on *Bywaters* in the § 285 dispute at issue in *Homeland Housewares, LLC v. Sorensen Research*, 581 F. App'x 877, 881 (Fed. Cir. 2014).

lodestar by determining the number of reasonable hours worked in the litigation and multiplying that by the hourly rate. *Id.* at 1226. That figure, however, was judged by the district court to be "extremely high" in view of both the small amount in controversy and the low level of "legal skill" required. *Id.* The district court also noted that the figure "exceeded the amount calculated under the contingent-fee option in the fee agreement." *Id.* The district court therefore reduced the calculated lodestar by 50%. *Id.*

This Court reversed and remanded for the after-the-fact reduction of the lodestar. *Id.* at 1228. This Court explained that the district court was not wrong for accounting for the "amount involved," the "results obtained," and "low level of legal skill involved" in general, but those factors must be incorporated into the lodestar analysis itself, as they will necessarily bear upon the reasonableness of the number of hours expended and the hourly rate charged. *Id.* at 1230-32. The contingency-fee agreement was likewise incorrectly used for an after-the-fact departure from the lodestar. *Id.* Instead, the district court should have accounted for "the fee agreement in calculating the lodestar figure rather than by reducing the lodestar figure itself." *Id.* at 1232.

Similarly, here, the District Court should have accounted for the hybrid-fee agreement in the lodestar analysis. There is therefore no doubt that (1) a contingency fee agreement is essential to the lodestar figure (*Bywaters*); and

(2) § 285 is intended to fully compensate a party wronged by unreasonable patent litigation (*Mathis*). The only outcome that fulfills both principles is for Sidense to be awarded the full amount of fees it actually incurred opposing Kilopass's unreasonable litigation, as reflected in the hybrid-fee agreement.

### 3.   The District Court Committed Clear Legal Error by Ignoring the Hybrid-Fee Agreement in its Lodestar Figure

The District Court's analysis of the law governing the hybrid-fee agreement and its factual findings about the agreement itself are so favorable to Sidense, Sidense could have scarcely laid a better foundation for approval of its fee request had it drafted the opinion itself. The District Court, however, ultimately doubled-back on its reasoning and refused to award Sidense fees under the agreement. As explained above and below, the District Court's reluctance to make Sidense whole is contrary to law and constitutes clear error.

As explained *supra,* the District Court diligently analyzed the hybrid-fee agreement and relevant facts here to ensure—and did indeed find—that the hybrid-fee agreement was a "legitimate reflection of the prevailing rate in the community," as opposed to a self-serving agreement in anticipation of fee-shifting litigation. A40. The District Court also agreed with Sidense that *Bywaters* supported incorporation of the hybrid-fee agreement into the lodestar, and that *City of Burlington v. Dague*, 505 U.S. 557 (1992) disfavored only "an enhancement

- 59 -

*above* the lodestar," which presented "an issue markedly different" from whether a "particular hybrid contingency agreement may be used in establishing a 'reasonable rate.'" A39-40.

After all of this analysis supporting a full award, however, the District Court abruptly refused to make Sidense whole solely because Sidense "failed to provide evidence that the prevailing rates in the community for attorneys of similar ability and expertise are variable in nature, and linked to pre-specified litigation outcomes. A45. Absent such evidence, the District Court refused to award Sidense a fee approximating what the District Court referred to as Sidense's "contingency bonus." *Id.*

This "variable prevailing rates" evidentiary requirement, however, was created from whole cloth by the District Court, is inconsistent with controlling precedents and the District Court's own legal and factual findings, and is completely unworkable. As such, the District Court's decision is based on an erroneous view of the law and an erroneous assessment of the evidence, and must be reversed.[11]  *See Highmark*, 134 S. Ct. at 1748 n.2; *Cooter*, 496 U.S. at 405.

As an initial matter, there is no support in the case law for the District Court's requirement that a litigant put forth evidence that a particular agreement is

---

[11] The reliance on *Perdue* in particular to deny the full fee request is directly contrary to its earlier analysis of *Perdue* as ***supporting*** the hybrid-fee agreement's role in the lodestar calculation.  *See* A40 n.4.

commonplace in the industry before it can be incorporated into the lodestar. Quite the opposite, in *Bywaters*, this Court demanded incorporation of the fee agreement into the lodestar figure without any analysis with respect to the frequency or market acceptance of such contingency fee agreements. 670 F.3d at 1232.

The authority cited by the District Court is not helpful to its conclusion that there exists a "variable prevailing rates" evidentiary requirement. Both of those cases involved requested excess fee awards with respect to ***plaintiff's*** counsel—*i.e.*, a true "bonus"—not defendant's counsel, as here where the fee request is sought to reimburse Sidense for its actual legal expenses. *See Beckman Instruments, Inc. v. LKB Produkter AB*, 703 F. Supp. 408, 411 (D. Md. 1988) *aff'd in part and vacated in part*, 892 F.2d 1547 (Fed. Cir. 1989) ("[T]he Court will not grant the request for $75,178.75 for fees withheld. That represents an amount ***plaintiff's*** attorneys agreed to bill only if a favorable outcome were obtained. As such, it represents a bonus rather than standard fees.") (emphasis added).

In particular, the District Court relied on language from the Supreme Court's 2010 decision in *Perdue*, in which the Supreme Court explained that "if hourly billing becomes unusual, an alternative to the lodestar method may have to be found," but found no argument or evidence that "that day has arrived." A45; *see Perdue*, 559 U.S. at 556.

Importantly, however, the Supreme Court in *Perdue* was concerned with a far different procedural and factual issue than present here. The issue in *Perdue* was a request for an "enhancement" of a successful plaintiff counsel's fees to off-set the accumulated risk inherent in a legal business model built on contingency cases. The Supreme Court expressly distinguished such after-the-fact "enhancement" for contingency risk from awards tied to reduced fees subject to pre-specified litigation outcomes:

> We are told that, under an increasingly popular arrangement, attorneys are paid at a reduced hourly rate but receive a bonus if certain specified results are obtained, and this practice is analogized to the award of an enhancement such as the one in this case. [] The analogy, however, is flawed. **An attorney who agrees, at the outset of the representation, to a *reduced hourly rate* in exchange for the opportunity to earn a performance bonus is in a position far different from an attorney in a § 1988 case who is compensated at the *full prevailing rate* and then seeks a performance enhancement in addition to the lodestar amount after the litigation has concluded.** Reliance on these comparisons for the purposes of administering enhancements, therefore, is not appropriate.

*Perdue*, 559 U.S. at 556–57 (bold emphasis added). Thus, *Perdue* in no way bars the incorporation of the hybrid-fee agreement into the lodestar analysis—to the contrary, *Perdue* suggests it is appropriate.[12] The District Court itself agreed with

---

[12] The Supreme Court noted in *Perdue* that arrangements similar to the hybrid-fee agreement here were becoming "increasingly popular," and implied that full awards of fees in those arrangements would be proper and consistent with established legal principles for awarding fees by the lodestar method. *See id.*

this interpretation, noting that *Perdue* "distinguished *Dague* and its progeny from cases involving hybrid fee agreements such as the one in this case." A40 n.4. The District Court, however, then inconsistently disagreed with itself when it relied upon *Perdue* to support the very opposite conclusion. *See* A45.

The District Court's first interpretation of *Perdue* was the correct one. *Perdue* did not advise against the incorporation of a hybrid-fee agreement into the lodestar calculation, but rather rejected an after-the-fact enhancement of the lodestar (similar to *Bywaters*). *Id.* at 559-60. In that case, the lower court had calculated the lodestar at approximately $6,000,000. *Id.* at 548. The lower court then awarded a 75% enhancement of the lodestar figure. *Id.* The enhancement was purportedly justified based on a number of factors, including superior attorney performance, superior results achieved, counsel's advancement of case expenses, counsel's delayed compensation, and the risk inherent in the contingent nature of the case. *Id.*

The Supreme Court rejected the 75% post-lodestar enhancement, holding that the lodestar should not be enhanced absent the rarest of situations, and not for factors that are typically subsumed in the lodestar analysis. *Id.* at 552-53. The chosen 75% enhancement was criticized as "essentially arbitrary," as the District Court "did not point to anything in the record" to justify the multiplier. *Id.* at 557. Awarding fees based on such an "impressionistic basis" undermined a major

purpose of the lodestar method, which is to provide an "objective and reviewable basis for fees." *Id.* at 558. Moreover, the "unjustified enhancement" served "only to enrich attorneys" in the context of a § 1988 award, at the expense of state and local taxpayers. *Id.* at 559. Finally, the court's reliance on the "contingency of the outcome" contravened *City of Burlington v. Dague*, 505 U.S. 557 (1992). *Id.* at 558.

*Dague* had similarly ruled against awarding after-the-fact contingency enhancements to the lodestar. *Id.* at 566-67. The Supreme Court rejected the approach offered by the concurring opinion in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987) (*Delaware Valley II*) in favor of such enhancement as unworkable. *Id.* at 563-565.[13] The Supreme Court further held that enhancing the lodestar for contingency risk would encourage the bringing of non-meritorious cases because an attorney operating on a contingency-fee basis "pools the risks presented by his various cases," and "to award a contingency enhancement under a fee-shifting statute would in effect pay for the attorney's time (or anticipated time) in cases where his client does not prevail." *Id.* at 565. Fee-shifting statutes are "not designed as a form of economic relief to improve the financial lot of lawyers." *Id.* at 563. Moreover, "[c]ontingency enhancement

---

[13] That position rested upon propositions that were mutually inconsistent as a practical matter, would make enhancement turn upon a circular test for a very large proportion of contingency-fee cases, and could not achieve its goal of mirroring market incentives. *Id.*

would make the setting of fees more complex and arbitrary." *Id.* at 566. For these reasons, the Supreme Court rejected after-the-fact enhancement of the lodestar rate to account for the risk of contingency.

Here, on the other hand, Sidense made no "calculation" about whether to initiate suit—litigation was foisted upon it by Kilopass. Similarly, there is no concern of overcompensating Sidense's attorneys—who will be paid regardless of the fee award as a result of the two promissory notes executed by Sidense. Instead, the concern is the actual, full reimbursement for the defendant, Sidense, as the result of being forced into a desperate situation by a competitor pressing baseless patent litigation. Unlike *Dague*, and *Perdue*, the fees here are not coming out of the pocket of the taxpayer. Rather, they will come from Kilopass—a private litigant that pursued litigation for the sole purpose of destroying its competitor, with no regard for the sufficiency of its claims. Similarly, and again unlike *Dague*, there is nothing "arbitrary" or "impressionistic" about the request at hand. It is rather grounded in the objective terms of the hybrid-fee agreement, and there is no risk that endorsing this category of awards would make attorney fee jurisprudence unreviewable. As such, the concerns of *Dague* are inapplicable here.

In sum, none of this authority counsels against incorporating the hybrid-fee agreement in the lodestar calculation. *Perdue* and *Dague* refer to after-the-fact enhancement, rather than incorporation of a hybrid-fee agreement into the lodestar

itself.  As explained *infra*, this distinction is the central holding of *Bywaters*.  670
F.3d at 1228-1230.  Moreover, *Bywaters* referenced both *Dague* and *Perdue* when
it favored the incorporation of fee-agreements into the lodestar.  670 F.3d at 1228-
1230.  There is thus no doubt that *Bywaters* considered the Supreme Court's
authority in its holding, and incorporation of the hybrid-fee agreement into the
lodestar here is appropriate under Bywater.

Furthermore, the District Court's self-imposed "variable prevailing rates"
evidentiary requirement presents an unworkable standard that would impair
financial flexibility for small defendants needing to combat or resist expensive
patent litigation lawsuits. *See, e.g.*, *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, No.
CV 01-2223, 2015 WL 4941793, at *1–6 (E.D. Pa. Aug. 19, 2015) (abusive patent
litigation—"motive in bringing suit was not to assert its patent rights, but to
interfere improperly with Defendants' business and to protect its own competitive
advantage"—ultimately bankrupted defendant). This cannot be correct.

Unlike the generalized publishing of standard attorney rates, which is
common in the industry, the frequency—let alone terms—of defensive
contingency agreements by clients in complex litigation is not published in the
industry.  Indeed, the vast majority of those agreements by their nature contain
confidential and competitive financial information and terms and are likely
maintained as such.  Consequently, even if there were "prevailing rates" for

variable-rate defense contingency agreements, this information would be extremely difficult to access. Accordingly, defendants requesting fees based on agreements like the hybrid-fee agreement here are left with a completely unworkable standard under the District Court's standard.

Moreover, the reasonableness check generally provided by prevailing rates is unnecessary in situations like this where there has been arms-length negotiation of hourly rates to be paid the law firm by its counseled client. By contrast, in §1988 awards—the context of *Perdue* and *Dague*—where there is no arms-length negotiation of hourly rates, prevailing rates provide a necessary yardstick as to the reasonableness of the hourly rates being sought, especially where the fee will be paid by taxpayers. Here, however, where Sidense, "represented by independent counsel," entered into an arms-length negotiation of hourly rates to be paid to KTS, there is no logical reason to require evidence of prevailing rates. *See* A41. This is especially true given that the hybrid-fee agreement here was custom-tailor to the specific needs of Sidense with respect to both variable hourly rates and time for payment of fees. As such, the very notion of prevailing rates for custom-tailored fee agreements is anomalous.

Certainly, unless there were evidence that the success fee rate was set artificially with the prospect of a § 285 award in mind—which the District Court explicitly found was ***not*** the case here (A40-41)—there is no sound policy reason

to require evidence of "prevailing rates" for variable-rate defense contingent fee agreements.

If the District Court used the absence of prevailing rates for defense contingency agreements as an excuse for holding down the size of the award, it should not have done so[14], for several reasons. First, litigation loser Kilopass has greatly profited from lawsuit whereas litigation winner Sidense has been damaged far beyond its mere legal fees[15], and that circumstance will not have been rectified by the § 285 award in this case – regardless whether the award is in the amount awarded by the District Court ($5.5 million), or in a larger amount sought by this cross appeal ($8 million).

---

[14] Sidense does not in the least intend to demean the District Court's decision. Abusive patent infringement litigation has become a matter of concern judicially, legislatively and in the public arena. Sidense recognizes that the present appeal involves matters of first impression and fully understands why the District Court may have been cautiously reluctant to grant Sidense the larger award, even though the District Court's findings and case authority analyses seemed to wholeheartedly support the larger award.

[15] The lawsuit badly harmed litigation winner Sidense, who fell far behind Kilopass and had only limited room success recapturing customers it has lost during the lawsuit. A14139-14140, ¶¶ 2-8. In the meantime, litigation loser Kilopass's business prospered. *Id.* Indeed, on April 15, 2013, only five days after this Court affirmed the District Court's judgment of noninfringement, litigation loser Kilopass boasted, "Kilopass continues to grow. … We had our best Q1 quarterly results ever on our baseline licensing business; up by 35% over the same period in the prior year. … With the recent $8 million funding, we are accelerating the expansion of the product roadmap beyond antifuse NVM." A14017.

Second, the District Court should not be concerned about the potential for a large award in this case chilling *valid* patent infringement lawsuits. As the District Court was careful to point out in this case, this was not a run-of-the-mill case. *See* A14-23. The District Court took pains to explain why Kilopass's overall case – a combination of a baseless literal infringement and baseless doctrine of equivalents claims – was objectively baseless. *See id.* Kilopass had no excuse for its literal infringement claim and, as the District Court explained, could not have reasonably relied upon the information it gathered during its pre-litigation investigation. A15-16. The District Court's opinion sets a high bar for proof of objective baselessness, leaving more than enough room for good faith patent owners to pursue reasonable patent infringement claims without concern that a failure to prove those reasonable claims might expose them to a § 285 award.

Third, aside from the District Court's inconsistent conclusions with respect to this unworkable evidentiary standard, the District Court's other, more thorough legal and factual findings support an award of Sidense's ***full fees*** under the hybrid-fee agreement. As discussed *supra*,, the District Court correctly and accurately distinguished aspects of both *Perdue* and *Dague* from the facts at bar. A39–40. The District Court also correctly and accurately relied on *Blanchard* and this Court's opinion in *Bywaters*, noting that the actual "attorney-client fee arrangement can provide valuable indication of the prevailing reasonable rate in the community"

and that thus the hybrid fee agreement here "may be taken into account in the lodestar calculation." A39 (quoting *Bywaters*, 670 F.3d at 1231). Indeed, the District Court expressly noted that "negotiation and payment of fees by sophisticated clients are ***solid evidence*** of their reasonableness in the market." A39 (emphasis added) (citation omitted).

All in all, and upon diligent review of the hybrid fee agreement, the District Court held that it "may therefore consider the [hybrid fee agreement] in determining the lodestar." A40.  But, as noted above, it completely failed to do so, contradicting its own holdings and analyses, other controlling legal precedents, and the policies and principles underlying § 285.  As explained herein, this is clear legal error that must be reversed.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court should be affirmed as to the grant of attorneys' fees under 35 U.S.C. § 285, but the District Court's calculation of awarded fees should be reversed as to refusal to award Sidense full fees requested under the hybrid-fee agreement.

Dated:  September 11, 2015          Respectfully submitted,

                                    KILPATRICK TOWNSEND & STOCKTON LLP


                                    By:  */s/ Roger L. Cook*
                                              Roger L. Cook

                                    Attorneys for Defendant-Cross-Appellant
                                    SIDENSE CORP.

# United States Court of Appeals
## for the Federal Circuit
KILOPASS TECHNOLOGY, INC. v SIDENSE CORP., 2013-1009

## CERTIFICATE OF SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by KILPATRICK TOWNSEND & STOCKTON LLP, Attorneys for Cross-Appellant to print this document. I am an employee of Counsel Press.

On **September 11, 2015**, counsel has authorized me to electronically file the foregoing **Brief for Defendant-Cross-Appellant (confidential and non-confidential versions)** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

> DARALYN J. DURIE
> MARK A. LEMLEY
> TIMOTHY C. SAULSBURY
> DURIE TANGRI LLP
> 217 Leidesdorff Street
> San Francisco, CA 94111
> (415) 362-6666
> ddurie@durietangri.com
> mlemley@durietangri.com
> tsaulsbury@durietangri.com
> *Counsel for Appellant*

Additionally on this date, the confidential copy will be emailed to the above counsel and paper copies will be mailed to the above principal counsel.

Upon acceptance by the Court of the e-filed document, six paper copies of the confidential version will be filed with the Court within the time provided in the Court's rules.

September 11, 2015                                    /s/ Elissa Matias
                                                     Counsel Press

## CERTIFICATE OF COMPLIANCE
## UNDER FEDERAL RULES OF APPELLATE PROCEDURE 32(A)(7)

Counsel for Defendant-Cross Appellant Sidense Corporation certifies that the brief contained herein, submitted under Federal Rule of Appellate Procedure 28.1(e)(2), has been prepared in a proportionally spaced 14-point typeface and contains 16,212 words, based on the "Word Count" feature of Microsoft Word 2010, including footnotes, but excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32.

*/s/ Roger L. Cook*
Roger L. Cook
Attorney for Appellant Sidense Corp.

67652538V.2