**2015-1506, -1543**

# United States Court of Appeals
# for the Federal Circuit

KILOPASS TECHNOLOGY, INC.,

*Plaintiff-Appellant,*

*v.*

SIDENSE CORPORATION,

*Defendant-Cross-Appellant.*

*Appeals from the United States District Court for the Northern District of California in No. 3:10-cv-02066-SI, Judge Susan Y. Illston.*

## REPLY BRIEF OF DEFENDANT-CROSS-APPELLANT SIDENSE CORPORATION

ROGER L. COOK
(California Bar No. 55208)
KEVIN J. O'BRIEN
(California Bar No. 278823)
KILPATRICK TOWNSEND &
STOCKTON LLP
Eighth Floor, Two Embarcadero Center
San Francisco, California 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
rcook@kilpatricktownsend.com
kobrien@kilpatricktownsend.com

JOSHUA H. LEE
(Georgia Bar No. 489842)
KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street, N.E.
Suite 2800
Atlanta, Georgia 30309-4528
Telephone: (404) 815-6500
jlee@kilpatricktownsend.com

*Attorneys for Defendant-Cross-Appellant*
*SIDENSE CORP.*

November 12, 2015

# CERTIFICATE OF INTEREST

Counsel for appellant Sidense Corp. certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:  Sidense Corp.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  Sidense Corp.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: N/A.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

> Roger L. Cook
> Kevin J. O'Brien
> Kilpatrick Townsend & Stockton LLP
> Eighth Floor, Two Embarcadero Center
> San Francisco, California  94111
>
> Joshua H. Lee
> Kilpatrick Townsend & Stockton LLP
> 1100 Peachtree Street, N.E., Suite 2800
> Atlanta, Georgia  30309

DATED:  November 12, 2015          Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP


By:  /s/ *Roger L. Cook*
    ROGER L. COOK

Attorneys for *Defendant-Cross-Appellant* Sidense Corp.

# TABLE OF CONTENTS

<u>Page</u>

CERTIFICATE OF INTEREST ............................................................... i

LIST OF ABBREVIATIONS AND CONVENTIONS ...................................... vi

I.   INTRODUCTION ...................................................................1

II.  STATEMENT OF FACTS ........................................................4

III. ARGUMENT.........................................................................7

    A.   *Perdue* Does not Support the District Court's
         Decision to Require Evidence That the CFA
         Hourly Rates Prevailing in the Community are
         Variable and Linked to Pre-Specified Litigation
         Outcomes in a §285 Lodestar Analysis.............................7

    B.   *Perdue* Aside, There is no Legal Reason to
         Require Evidence That Prevailing Hourly Rates
         are Variable in Nature and Linked to Pre-Specified
         Litigation Outcomes in a §285 Lodestar Analysis...........................9

        1.   All Supreme Court decisions relied upon by
            Kilopass and the District Court involve
            §1988 mine-run fee-shifting provisions in
            civil rights and other citizen-enforcement
            statutes, whose fee-shifting objectives are
            materially different from the objectives of
            §285 of the Patent Statute. .....................................9

        2.   Application of *Bywaters* does not pose a
            Hobson's choice..................................................14

        3.   The District Court's "prevailing rate"
            requirement is impractical.....................................15

## TABLE OF CONTENTS
(continued)

Page

4.    Although the *Beckman* case involves the §285 fee-shifting statute, it does not provide material legal support for Kilopass's arguments or for the District Court's decision. ...............................................................16

C.    Sidense's Contingent Fee Agreement Whose Hourly Rates are Variable in Nature and Linked to Pre-Specified Litigation Outcomes is Reliable Evidence of Reasonable Hourly Rates for Use in the Lodestar Analysis .....................................................17

IV.    CONCLUSION..........................................................................18

CERTIFICATE OF SERVICE ..........................................................20

CERTIFICATE OF COMPLIANCE UNDER FEDERAL RULES OF APPELLATE PROCEDURE 32(A)(7) ..........................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bd. of Trustees of Hotel & Rest. Employees Local 25 v. JPR, Inc.*,
  136 F.3d 794 (D.C. Cir. 1998) ..................................................................... 12-13

*Beckman Instruments, Inc. v. LKB Produkter AB*,
  703 F.Supp. 408 (D. MD. 1988) ...................................................................7, 16

*Bywaters v. United States*,
  670 F.3d 1221 (Fed. Cir. 2012) ..................................................................14, 15

*Cent. Soya Co. v. Geo. A. Hormel & Co.*,
  723 F.2d 1573 (Fed. Cir. 1983) ............................................................ 10-11, 14

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994)...............................................................................11, 12, 13

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983).........................................................................................10

*Mathis v. Spears*,
  857 F.2d 749 (Fed. Cir. 1988) ...........................................................4, 10, 14, 15

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
  134 S.Ct. 1749 (2014).....................................................................................11

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986).........................................................................................10

*Perdue v. Kenny A., ex rel. Winn*,
  559 U.S. 542 (2010)..................................................................................*passim*

**Statutes**

17 USC §505 ..................................................................................................12

35 USC §285 ...........................................................................................*passim*

35 USC §1365 ..................................................................................................9

42 USC §1988 ............................................................................................................ 3, 9

42 USC §7604 ............................................................................................................... 9

## LIST OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| Kilopass | Kilopass Technology, Inc. |
| Sidense | Sidense Corporation |
| District Court | U.S. District Court for the Northern District of California (Illston, J.) |
| CFA or Hybrid Fee Agreement | Sidense/Kilpatrick Townsend Contingent Fee Agreement effective April, 2011 |
| First *Perdue* Paragraph or Performance Enhancement Paragraph | We reject the suggestion that it is appropriate to grant performance enhancements on the ground that departures from hourly billing are becoming more common. <u>As we have noted, the lodestar was adopted in part because it provides a rough approximation of general billing practices, and accordingly, if hourly billing becomes unusual, an alternative to the lodestar method may have to be found. However, neither respondents nor their *amici* contend that that day has arrived.</u> Nor have they shown that permitting the award of enhancements on top of the lodestar figure corresponds to prevailing practice in the general run of cases. *Perdue*, 556 U.S. at 556. |
| Second *Perdue* Paragraph or Hourly Rate Paragraph | We are told that, under an increasingly popular arrangement, attorneys are paid at a reduced hourly rate but receive a bonus if certain specified results are obtained, and this practice is analogized to the award of an enhancement such as the one in this case. The analogy, however, is flawed. An attorney who agrees, |

**LIST OF ABBREVIATIONS AND CONVENTIONS**
(continued)

<table>
<tr><td></td><td>at the outset of the representation, to a *reduced hourly rate* in exchange for the <u>opportunity to earn a performance bonus</u> is in a position far different from an attorney in a §1988 case who is compensated at the *full hourly rate* and then seeks a performance enhancement in addition to the lodestar amount after the litigation has concluded.  *Perdue*, 559 US at 556-557.</td></tr>
<tr><td>Brief or Kilopass Brief</td><td>Reply and Cross-Appeal Response of Plaintiff-Appellant Kilopass Technology, October 26, 2015</td></tr>
</table>

## I.    INTRODUCTION

When considering whether to use the hourly rate from the Sidense/Kilpatrick Townsend contingent fee agreement (CFA) as the "reasonable hourly rate" component in its lodestar analysis, the Court concluded that it could take the CFA into account in the lodestar analysis, that Sidense's CFA was "a legitimate reflection of the prevailing rate in the community," and that "the CFA may be relied upon in determining the 'reasonable' rate." (A40-41 at 15:4-16:9.) Nonetheless, the Court held that it was foreclosed from actually using the CFA to determine the reasonable rate in the lodestar analysis because "Sidense has failed to provide evidence that the prevailing rates in the community for attorneys of similar ability and expertise are [like the CFA] variable in nature, and linked to pre-specified litigation outcomes." (A45.) Sidense respectfully submits that the District Court's belief that it could not use the CFA rate in the lodestar analysis unless Sidense could show that the CFA rate was the prevailing rate in the community was mistaken, and that this mistake was legal error requiring reversal.

As authority for its "prevailing rate" ruling, the Court principally relied upon the underlined portion of the following paragraph in the Supreme Court's decision in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010):

> We reject the suggestion that it is appropriate to grant performance enhancements on the ground that departures from hourly billing are becoming more common. As we have noted, the lodestar was adopted in part because it provides a rough

> approximation of general billing practices, and accordingly, if hourly billing becomes unusual, an alternative to the lodestar method may have to be found. However, neither respondents nor their *amici* contend that that day has arrived. Nor have they shown that permitting the award of enhancements on top of the lodestar figure corresponds to prevailing practice in the general run of cases.

In the foregoing paragraph, however, the Supreme Court (First *Perdue* Paragraph) was addressing whether to award an after-the-fact performance enhancement to the lodestar and was not concerned with use of an actual before-the-fact performance-based fee agreement. Moreover, as evinced by the very next paragraph of the *Perdue* opinion (Second *Perdue* Paragraph), the Supreme Court said after-the-fact performance enhancements and before-the-fact performance-based fee agreements are not analogous:

> We are told that, under an increasingly popular arrangement, attorneys are paid at a reduced hourly rate but receive a bonus if certain specified results are obtained, and this practice is analogized to the award of an enhancement such as the one in this case. The analogy, however, is flawed. An attorney who agrees, at the outset of the representation, to a *reduced hourly rate* in exchange for the opportunity to earn a performance bonus is in a position far different from an attorney in a §1988 case who is compensated at the *full hourly rate* and then seeks a performance enhancement in addition to the lodestar amount after the litigation has concluded.

*Perdue*, 559 U.S. at 556-557 (italics in original, underline added).

Without directly challenging the foregoing distinction, Kilopass merely argues that use of the CFA hourly rate in the lodestar analysis "contravenes decades of Supreme Court precedent." (Brief at 31.)

However, the legal principles involved in the fee-shifting precedent Kilopass relies upon were all developed with regard to the fee-shifting provisions of Civil Rights statutes (*e.g.*, 42 USC §1988) and the like, all of which have the same citizen-enforcement purpose, which is to assure that attorneys who represent prevailing plaintiffs *always* get paid. By comparison, the "exceptional case" fee-shifting provisions like 35 USC §285 have an entirely different purpose, which is to deter improper litigation and compensate its victims in "exceptional" cases, so that fee-shifting awards are made in *relatively few* cases. In these "exceptional" cases the emphasis is on making the prevailing party "whole."

Despite their similar language, the Supreme Court interprets exceptional case fee-shifting provisions differently from fee-shifting provisions of the Civil Rights statute. In a case such as this, in the absence of controlling legal precedent, where Sidense is actually paying legal fees that it would not have incurred were it not for Kilopass's baseless claims of infringement, and where Sidense's decision to enter into the CFA was in large part motivated by financial strain arising out of that litigation, (A37, 40), there is no reason to subject Sidense to the all but impossible task of showing that the variable CFA rates – which the District Court has already

found to be reasonable – are prevalent in the legal community. Because payment of the CFA fees are coming directly out of Sidense's pocket, whether Sidense wins a §285 award or not, these fees should be shifted to Kilopass to make Sidense whole and deter similar filings.

Moreover, this Court in *Mathis* recognized that the "egregious" nature of a case can be important to the fee award analysis, and supports awarding full legal fees, i.e., all "legitimate expenses defendant was unfairly forced to pay." *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988). Kilopass's conduct here has indeed been egregious, described as "Draconian" by the District Court. (A14545.) The District Court should have considered itself free to award Sidense the full fees incurred in light of Kilopass's egregiousness, rather than mistakenly considering itself shackled to an artificial limitation which did not permit it to award Sidense full compensation for the "financial strain arising" from the baseless suit. (A40.)

## II.    STATEMENT OF FACTS

In the Second *Perdue* Paragraph, the Supreme Court strongly suggests that, even in civil rights cases, its precedent disfavoring after-the-fact contingency enhancement of the lodestar should not prevent courts from incorporating hybrid fee arrangements – of the very type at issue here – into the lodestar analysis:

> We are told that, under an increasingly popular arrangement, attorneys are paid at a reduced hourly rate but receive a bonus if certain specified results are obtained, and this practice is

> analogized to the award of an enhancement such as the one in this case. The analogy, however, is flawed. An attorney who agrees, at the outset of the representation, to a *reduced hourly rate* in exchange for the opportunity to earn a performance bonus is in a position far different from an attorney in a §1988 case who is compensated at the *full hourly rate* and then seeks a performance enhancement in addition to the lodestar amount after the litigation has concluded.

*Perdue*, 559 U.S. at 556-557 (italics in original).

After Sidense prominently featured the Second *Perdue* Paragraph in its Opening Brief in the District Court, Kilopass ignored it, and argued in favor of the very analogy that *Perdue* said was "flawed." Specifically, Kilopass argued that Sidense's fee arrangement, where it agreed to pay its lawyers at a low hourly rate for the opportunity to earn higher rate on litigation success, was analogous to the award of an arbitrary after-the-fact enhancement to the lodestar. (A14579, A14585, A14587, A14590.)

Neither Kilopass nor Sidense ever referenced the First *Perdue* Paragraph in the District Court. The District Court, however, relied upon this passage anyway to foreclose the actual use of the CFA in the lodestar analysis because "Sidense has failed to provide evidence that the prevailing rates in the community … are variable in nature, and linked to pre-specified litigation outcomes." Sidense did not refer to it because it was directed to after-the-fact performance enhancements of the lodestar, rather than to using a before-the-fact fee agreement in the lodestar analysis itself, and, Kilopass had never argued that Sidense should be denied use of

the CFA in the lodestar for failure to provide evidence that it conformed to prevailing rates in the community. Consequently, Sidense was surprised when the District Court cited the First *Perdue* Paragraph as the reason it could not use the CFA rate in its lodestar analysis.

This ruling was especially surprising because, after an extensive discussion of the evidence and arguments, the District Court's factual findings unequivocally supported using the CFA in the lodestar analysis. Specifically, the Court concluded that it could take the CFA into account in the lodestar analysis, that Sidense's CFA was "a legitimate reflection of the prevailing rate in the community," and that "the CFA may be relied upon in determining the 'reasonable' rate." (A40-41.) These findings were, in turn, based upon the following subordinate findings: (1) Sidense's decision to enter into the CFA was "in large part motivated by financial strain arising out of the litigation instituted by Kilopass; (2) the CFA was entered into at a time when the case law governing attorneys' fee-shifting under §285 imposed a significantly higher burden on the party requesting fees, therefore making it unlikely that Sidense was confident it would ever recover its fees; (3) Sidense executed promissory notes in favor of Kilpatrick Townsend & Stockton ("KTS") making it financially liable regardless of whether it could recover fees under §285; and (4) Sidense was represented by independent counsel when

negotiating the CFA with KTS, allowing it to exert its bargaining power, while

mitigating the risk of a potential conflict of interest. (A40-41.)

## III.    ARGUMENT

A.    *Perdue* Does not Support the District Court's Decision to Require
Evidence That the CFA Hourly Rates Prevailing in the Community
are Variable and Linked to Pre-Specified Litigation Outcomes in a
§285 Lodestar Analysis

The Court made no actual use of the CFA in the lodestar analysis in the

mistaken belief that Sidense was required to present evidence that the variable rate

CFA represented prevailing rates in the legal community: "Sidense has failed to

provide evidence that the prevailing rates in the community for attorneys of similar

ability and expertise are variable in nature, and linked to pre-specified litigation

outcomes." (A45) As principal authority for this denial, the District Court relied

upon language in the First *Perdue* Paragraph.[1] (A45-46.) The District Court arrived

at this conclusion *sua sponte* because Sidense had never argued that such evidence

was not required, just as Kilopass had never argued that such evidence was

required.

Kilopass now argues that *Perdue* supports the District Court's decision, but

it does not. *Perdue* involved a prevailing *civil rights plaintiff's* request for a 75%

subjective **after-the-fact enhancement to the lodestar** for good results. Although

[1] The District Court also secondarily relied upon *Beckman Instruments, Inc. v.
LKB Produkter AB,* 703 F.Supp. 408 (D. MD. 1988), an equally unhelpful district
court decision discussed *infra.*

*Perdue* did not involve an actual ***before-the-fact*** variable rate fee agreement as evidence of the "reasonable hourly rate" ***in the lodestar analysis itself***, the *dictum* in the *Perdue* decision suggests this would be acceptable.

The issue in this First *Perdue* Paragraph is whether the lodestar no longer represents general billing practices so that an alternative to the lodestar must be found. This is a far cry from the issue at hand, which – rather than attempting to find a reason to depart from the lodestar – ***squarely embraces use of the lodestar approach***.

In the Second *Perdue* Paragraph, *Perdue* compares an ***after-the-fact enhancement of the lodestar*** to a fee agreement similar to the Sidense CFA,[2] where the attorney charged a lower hourly rate in return for a success bonus, holding that such agreements are not analogous.

Consequently, even if this were a civil rights case, *Perdue* would not support the District Court's decision to require Sidense to show that the rates of the CFA rate structures are prevalent in the community.

---

[2] Sidense's success bonus is hourly-rate-based, not a lump sum.

B.    *Perdue* Aside, There is no Legal Reason to Require Evidence That Prevailing Hourly Rates are Variable in Nature and Linked to Pre-Specified Litigation Outcomes in a §285 Lodestar Analysis

    1.    All Supreme Court decisions relied upon by Kilopass and the District Court involve §1988 mine-run fee-shifting provisions in civil rights and other citizen-enforcement statutes, whose fee-shifting objectives are materially different from the objectives of §285 of the Patent Statute.

Kilopass argues that Sidense's cross-appeal "contravenes decades of Supreme Court precedent." (Brief at 31-34.) However, the legal principles involved in the fee-shifting precedent Kilopass relies upon (listed in the table below) have all been developed with regard to the fee-shifting provisions (e.g., 42 USC §1988) of civil rights statutes and other public interest statutes, i.e., the Civil Rights Act, the Clean Air Act, and the Clean Water Act, rather than with regard to the exceptional case fee-shifting provision §285 of the Patent Act.

| CASE | FEE-SHIFTING STATUTE | SUBJECT MATTER |
|------|----------------------|----------------|
| Dague (1982) | 35 USC §1365; 42 USC §6972 | Clean Water Act; Solid Waste Disposal Act |
| Hensley (1983) | 42 USC §1988 | Civil Rights Act |
| Blum (1984) | 42 USC §1988 | Civil Rights Act |
| Delaware Valley I (1986) | 42 USC §7604 | Clean Air Act |
| Delaware Valley II (1987) | 42 USC §7604 | Clean Air Act |
| Blanchard (1989) | 42 USC §1988 | Civil Rights Act |
| Perdue (2010) | 42 USC §1988 | Civil Rights Act |

Nonetheless, Kilopass sweeps this fundament difference aside, asserting that there is no "tension" between the fee-shifting jurisprudence of these cases,

and that of exceptional case §285 fee-shifting jurisprudence. Kilopass is incorrect.

The purpose of fee-shifting provisions like §1988 is to encourage citizen enforcement by assuring that attorneys who represent prevailing plaintiffs always get paid a reasonable fee. This is to ensure "effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Fees are therefore routinely awarded to *all* prevailing parties without any requirement that the case be exceptional.

> [I]f plaintiffs…find it possible to engage a lawyer based on the statutory assurance that he will be paid a "reasonable fee," the purpose behind the fee-shifting statute has been satisfied.

*Perdue*, 559 US at 552, quoting from *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

By comparison, exceptional case fee-shifting provisions like §285 have an entirely different purpose, which is to deter improper litigation and compensate its victims, albeit only in "exceptional" cases so that fee-shifting awards are made to relatively few prevailing parties. In these "exceptional" cases, the emphasis is on making the prevailing party "whole." As set forth in Sidense's opening brief, their purpose is to "reimburse a *party* injured when forced to undergo an 'exceptional case,'" and to deter similar future filings. *Mathis v. Spears*, 857 F.2d 749, 753 (Fed. Cir. 1988); *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d

1573, 1578 (Fed. Cir. 1983). The Supreme Court emphasized as much in the

recent case of *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*:

> In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (parallel cites), for
> example, we explained that in determining whether to award
> fees under a similar provision of the Copyright Act that
> district courts could consider a "nonexclusive" list of
> "factors," including "frivolousness, motivation, objective
> unreasonableness (both in the factual and legal components of
> the case) **and the need in particular circumstances to
> advance considerations of compensation and deterrence."**

134 S.Ct. 1749, 1756 (2014) n. 6. (bold added).

Thus, while the general lodestar factors are the same for all federal statutes,

the objectives of these fee-shifting statutes differ, and these differences are

reflected in the fee calculation. *Perdue* defined a "reasonable fee" as "a fee

sufficient to induce a capable attorney to undertake the representation of a

meritorious civil rights case." 559 U.S. 542, 552 (2010). In contrast, *Central Soya

Company* defined a reasonable fee "to include those sums that the prevailing

party incurs in the preparation for and performance of legal services related to the

suit." 723 F.2d at 1578. As a result, different goals are being served by the

respective statutes, and application of the lodestar factors in the patent context are

shaded toward fulfilling the compensatory goals of the exceptional case statute,

just as the lodestar precedent has been shaded toward fulfilling the "access to the

courts" goals in the civil rights context.

To that end, the Supreme Court has interpreted the exceptional case fee-shifting provision of the Copyright Act (17 USC §505) differently from the fee-shifting provisions of the civil rights statutes, based upon the different fee-splitting objectives of those two statutory regimes. In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court rejected the respondent's argument that prevailing plaintiffs and defendants should be held to different standards under §505 of the Copyright Act because prevailing plaintiffs and defendants are held to different standards (referred to as the "dual" standard) under the fee-shifting provisions of the Civil Rights statutes. In so holding, the Court looked to the "important policy objectives of the Civil Rights statutes and the intent of Congress to achieve such objectives through the use of plaintiffs as 'private attorneys general,'" whereas the same policy considerations are not at work in the case of a prevailing civil rights defendant.  510 U.S. at 522-523. By comparison, the Court found, the objectives of the Copyright Act were different and so did not justify applying the Copyright Act's exceptional case fee-shifting provision §505 differently, as between prevailing plaintiffs and prevailing defendants. 510 U.S. at 524-525.

Other courts have recognized the impact these differences in purposes have on implementating fee-shifting statutes in different statutory regimes.  For example, *see Bd. of Trustees of Hotel & Rest. Employees Local 25 v. JPR, Inc.*,

136 F.3d 794, 801 (D.C. Cir. 1998), discussing an ERISA case and noting differences from Civil Rights Act for fee shifting:

> *Delaware Valley* thus endorses the application of law developed under section 1988 to other fee-shifting provisions that have the same citizen-enforcement purpose. . . .[I]n *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989), the Court observed that 'fee-shifting statutes' similar language is a strong indication that they are to be interpreted alike' . . . [c]onversely, in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), <u>the Court found that the "normal indication" of *Zipes* could be "overborne" if the factors that justify a fee-shifting rule in one context, such as the purpose or legislative history of a statute, are absent in another.</u>

Consequently, in a case such as this, where Sidense itself is actually paying its legal fees that it would not have incurred but for Kilopass's claims of infringement, and where Sidense's decision to enter into the non-standard fee agreement was in large part motivated by financial strain arising out of the litigation instituted by Kilopass (A37, 40), there is no reason to subject Sidense to the all but impossible task of showing that the non-standard variable CFA rates – which the District Court has already found to be reasonable – are prevalent in the community. Given § 285's dual purpose of compensation and deterrence, these fees should be shifted to Kilopass to make Sidense whole and deter similar future filings.

- 13 -

2.    Application of *Bywaters* does not pose a Hobson's choice.

According to Kilopass, Sidense's application of *Bywaters* poses an all or nothing Hobson's choice. (Kilopass Brief at 36). Sidense does not argue that the District Court simply needs to "think about" the fee agreement in the context of lodestar, nor does Sidense argue that the District Court must invariably give "controlling effect" to a fee agreement in every exceptional case. Rather, the District Court must determine whether the fee agreement is reasonable in the specific circumstances of the exceptional case at issue. *See Bywaters v. United States*, 670 F.3d 1221, 1232 (Fed. Cir. 2012); *Mathis*, 857 F.2d at 754 ("[R]equirement that the fees awarded be 'reasonable' is a safeguard against excessive reimbursement."). If that the fee agreement is reasonable, then the policy of ensuring that "the injured party" is "placed, as near as may be, in the situation he would have occupied if the wrong had not been committed" requires full compensation of the amount actually paid. *Id.* at 753. Here, the District Court found the fee agreement to be a reasonable response to Kilopass's suit in every factual respect, and only declined to award fees based on a legally erroneous application of *Perdue*. A40-41, 45. It was therefore error in the circumstances of this particular case to decline an award of full compensation.

Kilopass also argues that *Mathis* and *Central Soya* stand only for the "proposition that a party should be awarded fees corresponding to the exceptional

nature of the case." (Kilopass Cross-Appeal Opposition Brief at p. 43.) The District Court, however, ruled that the entirety of the case was exceptional under the "totality of the circumstances" standard. (A24, A38.) Kilopass aimed to destroy Sidense with frivolous and costly patent litigation theories, which infected the case from beginning to end. (A14-A24, A38.) This is why the District Court characterized both the "patent lawsuit" and Sidense's resulting "need to pay the lawyers" as "Draconian." (*See* A14545.) *Mathis* itself recognized that the "egregious" nature of a case can be important to the fee award analysis, and supports awarding all "legitimate expenses defendant was unfairly forced to pay." 857 F.2d at 754.

3.     The District Court's "prevailing rate" requirement is impractical.

The District Court's "prevailing rate" requirement is impractical. Unlike general hourly rates, the terms of agreements like the CFA are generally confidential and not accessible to litigants—and Kilopass never argued otherwise. The District Court's ruling would make it impossible as a practical matter for any agreement with a hybrid element to be reflected in the lodestar—a result in conflict with *Bywaters* holding that such agreements should be considered when appropriate. 670 F.3d at 1232.

4.    Although the *Beckman* case involves the §285 fee-shifting statute, it does not provide material legal support for Kilopass's arguments or for the District Court's decision.

In its ruling, (A45), the District Court relied on *Beckman Instruments, Inc. v. LKB Produkter AB*, 703 F. Supp. 408, 411 (D. Md. 1988) *aff'd in part and vacated in part*, 892 F.2d 1547 (Fed. Cir. 1989), a conclusory district court case with no legal reasoning that declined to award a tiny contingency element as part of an exponentially larger fee request. *Id.* The contingency in *Beckman* was $75,000, paltry in comparison to the nearly two million dollars eventually awarded in the case. *See id.* at 411-12. The propriety of this minor fee was almost certainly not robustly briefed for the lower court, which explains why the opinion lacks any legal analysis. *Id.* A case so light on legal discussion of the lodestar and the purposes of the exceptional case law has no persuasive value, nor is it precedential in this case. Moreover, there is no suggestion that the *Beckham* factual posture even remotely resembled the present request, which involves a defensive-hybrid fee agreement borne out of the financial strain of a meritless suit brought by a litigant bent on destroying a smaller competitor. For these reasons, the district court's reliance on *Beckman* as controlling authority does not avoid error.

C.     Sidense's Contingent Fee Agreement Whose Hourly Rates are
       Variable in Nature and Linked to Pre-Specified Litigation Outcomes
       is Reliable Evidence of Reasonable Hourly Rates for Use in the
       Lodestar Analysis

Shorn of any material legal support for the District Court's requirement for

evidence that agreements of this type are prevalent in the community, Kilopass is

left with the District Court's inconvenient factual findings that Sidense's CFA was

"a legitimate reflection of the prevailing rate in the community" and that "the CFA

may be relied upon in determining the 'reasonable' rate." (A40-41 at 15:12-15,

16:6-7.) These findings were, in turn, based upon subordinate findings that: (1)

Sidense's decision to enter into the CFA was "in large part motivated by financial

strain" arising out of the litigation instituted by Kilopass, (2) the CFA was entered

into at a time when the case law governing attorneys' fee-shifting under §285

imposed a significantly higher burden on the party requesting fees, therefore

making it unlikely that Sidense was confident it would ever recover its fees, (3)

Sidense executed promissory notes in favor of KTS making it financially liable

regardless of whether it could recover fees under §285, and (4) Sidense was

represented by independent counsel when negotiating the CFA with KTS, allowing

it to exert its bargaining power, while mitigating the risk of a potential conflict of

interest. *Id.* at 15:15-16:6. These findings make clear that, in the absence of

evidence to the contrary, the CFA hourly rate Sidense agreed to pay, and is paying

to KTS, is a reasonable hourly rate suitable for use in the lodestar analysis.

Because Kilopass does not challenge these District Court findings, and never referred to any counter-evidence tending to prove that the CFA rates were unreasonable, if the District Court's "prevailing rate" ruling was erroneous, this Court should reverse and enter judgment in Sidense's favor on the Cross-Appeal.

## IV.    CONCLUSION

This Court should reverse the District Court's legally erroneous *sua sponte* ruling wherein it foreclosed use of Sidense's performance-based CFA hourly rates in the Court's §285 lodestar analysis because Sidense did not provide evidence that such performance-based hourly rates are prevalent in the forum legal community.

The precedent the Court relied upon in making its *sua sponte* ruling was inapposite because it involved the fee-shifting provision of a Civil Rights statute whose fee-shifting objectives are materially different from the objectives of exceptional case fee-shifting provisions, like §285, as found in the Patent Act and Copyright Act. Moreover, even if civil rights precedent could apply, it would not apply because none of that precedent forbids use of performance-based hourly rates agreed to before-the-fact in a lodestar analysis. Instead, the Supreme Court's *Perdue* decision indicates that such an application might be appropriate.

Upon reversing the District Court's ruling, this Court need not remand for further proceedings in accordance with proper legal principles since the District Court has already found the CFA to be "a legitimate reflection of the prevailing

rate in the community" and Kilopass has not challenged that finding on appeal.

Instead, this Court can and should instruct the District Court to enter judgment in

the amount of $8,112,054.  *See* (A14570 at 3:14-15.)

DATED: November 12, 2015          Respectfully submitted,

                                  KILPATRICK TOWNSEND &
                                  STOCKTON LLP


                                  By:  */s/ Roger L. Cook*
                                       ROGER L. COOK

                                  Attorneys for *Defendant-Cross-Appellant*
                                  Sidense Corp.

**United States Court of Appeals
for the Federal Circuit**

**KILOPASS TECHNOLOGY, INC. v SIDENSE CORP., 2013-1009**

**CERTIFICATE OF SERVICE**

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by KILPATRICK TOWNSEND & STOCKTON LLP, Attorneys for Cross-Appellant to print this document. I am an employee of Counsel Press.

On **November 12, 2015**, counsel has authorized me to electronically file the foregoing **Reply Brief for Defendant-Cross-Appellant** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

> DARALYN J. DURIE
> MARK A. LEMLEY
> TIMOTHY C. SAULSBURY
> DURIE TANGRI LLP
> 217 Leidesdorff Street
> San Francisco, CA 94111
> (415) 362-6666
> ddurie@durietangri.com
> mlemley@durietangri.com
> tsaulsbury@durietangri.com
> *Counsel for Appellant*

Additionally, paper copies will be mailed to the above counsel the above principal counsel at the time copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies of

will be filed with the Court within the time provided in the Court's rules.

November 12, 2015                                                    /s/ Robyn Cocho
                                                                    Counsel Press

## CERTIFICATE OF COMPLIANCE
## UNDER FEDERAL RULES OF APPELLATE PROCEDURE 32(A)(7)

Counsel for Defendant-Cross Appellant Sidense Corporation certifies that the brief contained herein, submitted under Federal Rule of Appellate Procedure 28.1(e)(2), has been prepared in a proportionally spaced 14-point Times New Roman typeface and contains 4,327 words, based on the "Word Count" feature of Microsoft Word 2010, including footnotes, but excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32.

/s/ Roger L. Cook
Roger L. Cook
Attorney for *Defendant-Cross-Appellant* Sidense Corp.

67914822V.1